1

**TOWER LEGAL GROUP, P.C.**
James A. Clark (SBN 278372)

2

Renee P. Ortega (SBN 283441)
11335 Gold Express Drive, Ste. 105

3

Sacramento, CA 95670

4

Telephone: (916) 361-6009
Facsimile: (916) 361-6019

5

Email: james.clark@towerlegalgroup.com
Email: renee.ortega@towerlegalgroup.com

6

*Counsel for Plaintiffs and the Class*

7

[Additional Counsel Listed on Signature Page]

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| TERA BOZZINI and ADRIAN GONZALES, individually, and as representatives of a Putative Class of Participants and Beneficiaries, on behalf of the FERGUSON ENTERPRISES, LLC 401(K) RETIREMENT SAVINGS PLAN f/k/a FERGUSON ENTERPRISES, INC. 401(K) RETIREMENT SAVINGS PLAN, <br><br> *Plaintiffs,* <br><br> v. <br><br> FERGUSON ENTERPRISES, LLC f/k/a FERGUSON ENTERPRISES, INC.; RETIREMENT PLAN COMMITTEE OF FERGUSON ENTERPRISES, LLC 401(K) RETIREMENT SAVINGS PLAN; and DOES 1-50, <br><br> *Defendants.* | Case No. 3:22-cv-05667-AMO <br><br> **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    November 20, 2025 <br> Time:    TBA <br> Location:  San Francisco Courthouse <br>      Courtroom 10 <br>      Hon. Araceli Martinez-Olguin |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that Plaintiffs, Tera Bozzini and Adrian Gonzales, on behalf of the proposed Settlement Class and the Ferguson Enterprises, LLC 401(k) Retirement Savings Plan (the "Plan"),[1] hereby move (the "Motion") before this Honorable Court pursuant to Federal Rule of Civil Procedure 23 for entry of an Order that: (1) preliminarily approves the Settlement Agreement with Defendants and Plaintiffs (collectively, the "Parties");[2] (2) preliminarily certifies the proposed Settlement Class; (4) approves the proposed notice plan; and (3) sets a final approval hearing on a date convenient for the Court at least 120 calendar days after the entry of a preliminary approval order.

A proposed Preliminary Approval Order is attached as **Exhibit C** to the Settlement Agreement. The proposed Settlement Class is defined as follows:

> All persons who were participants in or beneficiaries of the Plan at any time between September 30, 2016, through [DATE OF PRELIMINARY APPROVAL] (the "Class Period"), and any Alternate Payee of a Person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period.

Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems a Hearing necessary, on 11/20/25, or the earliest date convenient for the Court |
| Settlement Administrator to set up settlement website and toll-free number | ¶¶ 12, 13 | Within 30 days of entry of Preliminary Approval Order |
| Mail Settlement Notice | ¶ 11 | Within 30 days of entry of Preliminary Approval Order |

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

[2] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Peter A. Muhic. Terms not defined herein shall have the same meaning as in the Settlement Agreement.

| Final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 18 | 45 days before Final Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement ¶ 2.1.2 | Not later than 30 days before the Final Fairness Hearing |
| Deadline for filing of objections | ¶ 20 | Not later than 28 days before the Final Fairness Hearing |
| Deadline for Parties to file response to objections or file any additional papers in support of Settlement | ¶ 23 | Not later than 5 days before Final Fairness Hearing |
| Final Fairness Hearing | ¶ 2.2.6 | On a date convenient for the Court no sooner than 120 days after the date the Preliminary Approval Order is entered |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the supporting Declaration of Peter A. Muhic ("Muhic Decl.") and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider. Plaintiffs respectfully submit that the proposed settlement memorialized in the Settlement Agreement (the "Settlement") is fair, reasonable, and adequate, and should be preliminarily approved and the proposed notice provided to the Settlement Class.

The Settlement is the product of arm's-length negotiations between the Parties, all of whom vigorously litigated this matter, are well-informed regarding all the issues in this litigation, and have significant experience in complex litigation of this type.

Pursuant to the inquiries provided in the Procedural Guidance for Class Action Settlement of this District,[3] Plaintiffs respond as follows:

    a.    Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.

    None.

---

[3] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

1

2     b.    Any differences between the claims to be released and the claims in the operative
3           complaint (or, if a class has been certified, the claims certified for class treatment) and
           an explanation as to why the differences are appropriate.

4     None.

5     c.    The class recovery under the settlement (including details about and the value of
6           injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each
           of their claims, claim by claim, and a justification of the discount applied to the claims.

7           The gross monetary recovery to the class under the settlement is $1,800,000, which is

8     an exceptional result, and represents 24.4% of Plaintiffs' most optimistic damages estimate. Further

9     detail regarding the damages analysis and recovery is provided in the supporting memorandum. *See*

10    Memorandum of Law in Support, Section III.C.1.

11    d.    Any other cases that will be affected by the settlement, an explanation of what claims
12          will be released in those cases if the settlement is approved, the class definitions in
           those cases, their procedural posture, whether plaintiffs' counsel in those cases
13          participated in the settlement negotiations, a brief history of plaintiffs' counsel's
           discussions with counsel for plaintiffs in those other cases before and during the
14          settlement negotiations, an explanation of the level of coordination between the two
           groups of plaintiffs' counsel, and an explanation of the significance of those factors
15          on settlement approval. If there are no such cases, counsel should so state.

16    None.

17    e.    The proposed allocation plan for the settlement fund.

18          The amount paid to each Class Member will be a pro-rata allocation of the Net Settlement

19    Amount, as set forth in the proposed Plan of Allocation and is based on the average account balance

20    of each Class Member's account during the relevant period. Similar pro-rata allocations have been

      widely approved in these types of cases. Further details are provided in the supporting memorandum,

21    and the proposed Plan of Allocation is attached as Exhibit B to the Settlement Agreement.

22    f.    If there is a claim form, an estimate of the expected claim rate in light of the experience
           of the selected claims administrator and/or counsel based on comparable settlements,
23          the identity of the examples used for the estimate, and the reason for the selection of
           those examples.

24          No claim form.

25

26

27

1

     g.    In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.

There is no reversion to Defendants.

Accordingly, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order and, if the Court deems necessary, hold a preliminary approval hearing on November 20, 2025, or the earliest date convenient for the Court.

Dated:  October 30, 2025

Respectfully submitted,

*/s/ Peter A. Muhic*

Peter A. Muhic
(*Admitted Pro Hac Vice*)
**MUHIC LAW LLC**
923 Haddonfield Road,
Suite 300 Cherry Hill, NJ  08002
Phone:  (856) 242-1802
Email:  peter@muhiclaw.com

James A. Clark (SBN 278372)
Renee P. Ortega (SBN 283441)
**TOWER LEGAL GROUP, P.C.**
11335 Gold Express Drive, Ste. 105
Sacramento, CA 95670
Telephone: (916) 361-6009
Facsimile: (916) 361-6019
Email: james.clark@towerlegalgroup.com
Email: renee.ortega@towerlegalgroup.com

Edwin J. Kilpela, Jr.
Paige T. Noah
**WADE KILPELA SLADE LLP**
6425 Living Place
Suite 200
Pittsburgh, PA 15206

412-314-0515
ek@waykayslay.com
pnoah@waykayslay.com

Paul Sharman
**The Sharman Law Firm LLC**
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
(678) 242-5297
paul@sharman-law.com


*Counsel for Plaintiffs and the Settlement Class*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................1

II.     RELEVANT BACKGROUND ..........................................................1

III.    THE PROPOSED SETTLEMENT.....................................................3

        A.      Class Definition ....................................................................3

        B.      Released Claims.....................................................................3

        C.      Class Relief ...........................................................................3

                1.      Settlement Fund ..........................................................3

                2.      Distribution of Settlement Funds to Class Members ...................................4

                3.      Payment of Case Contribution Awards.........................4

                4.      Payment of Attorneys' Fees, Costs, and Expense........................5

                5.      Any Uncashed Checks Will Be Distributed to the Settlement Fund ...........5

        D.      Approval of Settlement Terms by an Independent Fiduciary ...................................6

        E.      Settlement Administration .....................................................6

        F.      Dissemination of Notice to The Class ...................................7

        G.      Opportunity to Object ...........................................................8

        H.      The Court Retains Jurisdiction...............................................8

IV.     ARGUMENT .......................................................................................8

        A.      The Court Will Be Able to Able to Certify the Class for Purposed of Settlement ...................................8

                1.      The Settlement Class Satisfied Rule 23(a)...................9

                        a.      Numerosity ......................................................9

                        b.      Commonality ...................................................9

         c.      Typicality.................................................................................................11

         d.      Adequacy.............................................................................................12

    2.      The Settlement Class Satisfies Rule 23(b)(1).............................................13

    3.      Appointment of Class Counsel....................................................................14

  B.      The Settlement, Notice Plan, And Plan of Allocation Warrant
        Preliminary Approval..................................................................................14

    1.      The Settlement Should Be Preliminarily Approved....................14

    2.      The Notice Plan Should Be Preliminarily Approved..................17

    3.      The Plan of Allocation Should Be Preliminarily Approved.........19

IV.    CONCLUSION.........................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997)..................................................................................................8, 13

5

*Bailey v. Verso Corp.*
6
    2021 WL 5815727 (S.D. Ohio Dec. 24, 2021) ...............................................12

7
*Barcenas v. Rush Univ. Medical Ctr.*
8
    22-cv-00366 (N.D. Ill. Jan. 19, 2023)..........................................................19

9
*Beach v. JPMorgan Chase Bank, N.A.*
    2019 WL 2428631 (S.D.N.Y. June 11, 2019) ...............................................12
10

*Campbell v. Facebook, Inc.*
11
    951 F.3d 1106 (9th Cir. 2020) .......................................................................14

12
*Churchill Village, L.L.C. v. Gen. Elec.*
13
    361 F.3d 566 (9th Cir. 2004) .........................................................................17

14
*Cunningham v. Cornell Univ.*
15
    2019 WL 275827 (S.D.N.Y Jan. 22, 2019) ...............................................10, 11

16
*De Leon v. Ricoh USA, Inc.*
    2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) ..............................................8
17

*Deaver v. Compass Bank*
18
    2015 WL 8526982 (N.D. Cal. 2015) .............................................................16

19
*Does I v. Gap, Inc.*
20
    2002 WL 1000073 (D.N. Mar. Is. May 10, 2002) .........................................15

21
*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)........................................................................................17
22

23
*Etter v. Allstate Ins. Co.*
    2018 WL 5761755 (N.D. Cal. May 30, 2018) ...............................................16
24

*Evon v. Law Offices of Sidney Mickell*
25
    688 F.3d 1015 (9th Cir. 2012) .......................................................................10

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS
ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE
FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:22-cv-05667-AMO
-iii-

*Fleming v. Impax Lab'ys Inc.*
    2021 WL 5447008 (N.D. Cal. 2021) ...........................................................16

*Foster v. Adams & Assocs., Inc.*
    2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ........................................9, 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .....................................................................8

*Hanon v. Dataproducts Corp.*
    976 15 F.2d 497 (9th Cir.1992) ..................................................................10

*Harris v. Palm Springs Alpine Estates, Inc.*
    329 F.2d 909 (9th Cir. 1964) .......................................................................9

*Hefler v. Wells Fargo & Co.*
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)............................................18

*In re Lithium Ion Batteries Antitrust Litig.*
    2017 WL 1086331 (N.D. Cal. 2017) ..........................................................16

*In re MyFord Touch Consumer Litig.*
    2019 WL 1411510 (N.D. Cal. 2019) ..........................................................16

*In re Nexus 6P Prods. Liab. Litig.*
    2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ...........................................18

*In re Omnivision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................15

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) ....................................................................14

*Johnson v. Serenity Transp., Inc.*
    2021 WL 3081091 (N.D. Cal. July 21, 2021)..........................................8, 16

*Kanawi v. Betchtel Corp.*
    254 F.R.D. 102 (N.D. Cal. 2008)..........................................10, 11, 12, 13

*Karpik v. Huntington Bancshares, Inc.*
    2021 WL 757123 (S.D. Ohio Feb. 18, 2021)..........................................13, 19

*Leber v. Citigroup 401(k) Plan Inv. Comm.*

323 F.R.D. 145 (S.D.N.Y. 2017) .......................................................................................12

*Massachusetts Mutual Life Insurance Co. v. Russell*
473 U.S 134 (1985) ..........................................................................................................11

*Miguel v. Salesforce.com Inc.*
3:20-cv-01753-MMC (N.D. Cal. April 4, 2025) ........................................................16, 18

*Moreno v. Deutsche Bank Ams. Holding Corp*
2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)..........................................................12, 13

*Mullane v. Central Hanover Bank and Trust Co.*
339 U.S. 306 (1950) .........................................................................................................17

*New England Biolabs, Inc.*
2022 WL 20583575 (D. Mass. 2022) ................................................................................6

*Ortiz v. Fireboard Corp.*
527 U.S. 815 (1999) .........................................................................................................13

*Peters v. Nat'l R.R. Passenger Corp.*
966 F.2d 1483 (D.C. Cir. 1992) .......................................................................................17

*Philips v. Munchery Inc.*
2020 WL 6135996 (N.D. Cal. Oct. 19, 2020)....................................................................9

*Rites v. Ariz. Beverages USA, LLC*
287 F.R.D. 523 (N.D. Cal. 2012)......................................................................................9

*Sacerdote v. New York Univ.*
2018 WL 840364 (S.D.N.Y. Feb. 13, 2018).............................................................11, 12

*Shirk v. Fifth Third Bancorp*
2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ...............................................................13

*Slezak v. City of Palo Alto*
2017 WL 2688224 (N.D. Cal. June 22, 2017) ................................................................15

*Surowitz v. Hilton Hotels Corp.*
383 U.S. 363 (1966)........................................................................................................12

*Tadepalli v. Uber Techs.*
2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ................................................................15

*Tatum v. R.J. Reynolds Tobacco Co.*
    254 F.R.D. 59 (M.D.N.C. 2008) .................................................................11

*Terraza v. Safeway Inc.*
    16-cv-03994-JST (N.D. Cal. Sept. 8, 2020) .........................................19

*Urakhchin v. Allianz Asset Mgt. of Am., L.P.*
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)................................14, 15

*Viceral v. Mistras Grp., Inc.*
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ....................................15

*Vikram v. First Student Mgt., LLC*
    2019 WL 1084169 (N.D. Cal. Mar. 7, 2019)........................................8

*Villegas v. J.P. Morgan Chase & Co.*
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................................9

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011)...............................................................................9

*Walsh v. CorePower Yoga LLC*
    2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ....................................15

*West v. Continental Automotive, Inc.*
    2017 WL 2470633 (W.D.N.C. June 7, 2017) ....................................12

**Other**

28 U.S.C. § 1715 .................................................................................................7

29 U.S.C. § 1001 .................................................................................................1

29 U.S.C. § 1104 ...............................................................................................10

29 U.S.C. § 1109 .........................................................................................10, 11

29 U.S.C. § 1132(a)(2) .....................................................................................10

ERISA § 409 ........................................................................................1, 10,13

ERISA § 502 .......................................................................1, 9, 10, 11, 13

Fed. R. Civ. P. 23 ....................................................................8, 9, 10, 13, 17

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

After years of motion practice and litigation, the Parties have agreed to a proposed settlement ("Settlement") of the putative class action (the "Action"), brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., providing for total monetary relief of one million eight hundred thousand dollars ($1,800,000.00). Based on the exceptional relief provided by the Settlement and the risks of continued litigation, Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Plan, while Defendants' Counsel have vigorously defended against Plaintiffs' allegations.  The Parties agreed to the Settlement after four years of contested motion practice, litigation and arm's-length negotiations by experienced counsel. Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation (including potential appeals) that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, Plaintiffs submit that all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied. As such, Plaintiffs respectfully request that the Court grant the Motion and direct notice of the Settlement to issue in accordance with the proposed plan for Notice described below.

## II.    RELEVANT BACKGROUND

Plaintiffs Tera Bozzini and Adrian Gonzales ("Plaintiffs") are participants in the Plan. Dkt. No. 106 ¶¶1, 17-18, 27. The Plan is a defined contribution plan sponsored by Defendant Ferguson. *Id*. ¶¶1, 8, 22, 30. In addition to being the Plan sponsor, Ferguson is also the Plan administrator and has discretionary authority to control the operation, management and administration of the Plan. *Id*. ¶¶24, 60-61.

Plaintiffs filed their initial Class Action Complaint on September 30, 2022. Dkt. No. 1. In response to Defendants' Motion to Dismiss (Dkt. No. 36), Plaintiffs filed their First Amended

Complaint ("FAC") on January 30, 2023, alleging eight causes of action against Defendants, for alleged ERISA violations. Dkt. No. 44. Defendants filed their motion to dismiss Plaintiffs' FAC on April 3, 2023 (Dkt. No. 69), and Plaintiffs filed their Opposition on May 22, 2023. Dkt. No. 80. This Court heard argument on the motion to dismiss on October 12, 2023. Dkt. Nos. 93-94. On August 30, 2024, this Court granted, in part, Defendants' Motion to Dismiss Plaintiffs' FAC. Dkt. No. 102.

Plaintiffs filed their Second Amended Complaint on September 27, 2024. Dkt. No. 106. On October 25, 2024, Defendants filed a motion seeking to dismiss only Counts II and III of Plaintiffs' Second Amended Complaint. Dkt. No. 110. On December 5, 2024, Plaintiffs filed their opposition to the motion to dismiss. Dkt. No. 113. On December 23, 2024, Defendants filed a Reply in support of their motion. Dkt. No. 116. On March 3, 2025, Plaintiffs filed a Statement of Recent Decision. Dkt. No. 119. On May 29, 2025, the Court entered an Order dismissing Counts II and II of the Second Amended Complaint, Dkt. 123.

Following discussions between counsel, the Parties agreed on June 4, 2025 to schedule a private mediation of the claims remaining in the case, with the highly experienced mediator, Margaret Levy of ADR Services, Inc.. Muhic Decl. ¶20. Notwithstanding mediation, the Parties agreed that that discovery would continue. *Id.* On July 2, 2025, the Court entered a Scheduling Order for mediation and continuance of the Case Management Conference. Dkt. No. 128. On July 24, 2025, Plaintiffs served their First Set of Interrogatories and First Request for Production of Documents. Muhic Decl. ¶17. Thereafter, Defendants made four (4) separate productions of documents, which included their relevant recordkeeping and administrative services agreements, nine years of committee meeting minutes, fee benchmarking reports and other documents, which Plaintiffs reviewed, analyzed and considered, and consulted with their experts, in evaluating the strengths and weaknesses and the Plaintiffs' claims and the Defendants' defenses. *Id.* ¶¶18, 19. The Parties prepared and exchanged comprehensive mediation memoranda and participated in pre-mediation discussions with the mediator before the formal mediation session.  Muhic Decl. ¶22.

On August 11, 2025, the Parties participated in a full day mediation session by videoconference. After substantial debate and discussion, the Parties agreed upon the material terms

of settlement. *Id*. ¶23. Thereafter, over the course of several weeks, the Parties carefully negotiated and drafted the formal Settlement Agreement and all ancillary exhibits necessary to effectuate the proposed Settlement. *Id*. ¶23

## III.    THE PROPOSED SETTLEMENT

### A.    Class Definition

The Settlement Class is defined as: all persons who were participants in or beneficiaries of the Plan, at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. *See* Settlement Agreement, attached to Muhic Decl. as Exhibit 1, at Section 1.45. The "Class Period" means the period from September 30, 2016, through the date the Preliminary Approval Order is entered by the Court. *Id*. at Section 1.12.

### B.    Released Claims

If the Court grants Final Approval of the Agreement, the Settlement Class will be deemed to have released Defendants from the claims as described in Section 1.38 and Article 7 of the Agreement. *See* Exhibit 1, Section 1.38, Art. 7. The Agreement makes clear that "Released Claims do not include (a) claims pled in the Action that were dismissed by the Court; or (b) any claims unrelated to this Settlement, including any claims that the Class Representatives or Class Members may have to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final." *Id*., Section 1.38.6.

### C.    Class Relief

#### 1.    Settlement Fund

Defendants have agreed to pay a Settlement Amount of $1,800,000 to resolve Plaintiffs' claims. *Id*., Section 1.27. Plaintiffs estimated their maximum potential damages to be approximately $7.37 million. *See* Muhic Decl. ¶27. Accordingly, the Settlement Amount represents 24.4% of Plaintiffs' maximum potential damages, which exceeds the accepted range of recovery in class action settlements across the country and in this district. *Id*.

As set forth in sections 5.1, 5.2, and 5.3 of the Agreement, the Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to current and former participants of the Plan pursuant to the Plan of Allocation; (2) all claims for attorneys' fees and

expenses approved by the Court; (3) costs arising from evaluation of the settlement by the Independent Fiduciary (not to exceed $25,000); (4) all costs necessary to administer the Settlement, including, among other things, payment for the services of the Settlement Administrator and any related taxes and tax-related costs (not to exceed $110,000); and (5) payment of Case Contribution Awards to the named Plaintiffs not to exceed $7,500 each. Exhibit 1, at Section 1.7.

### 2.    Distribution of Settlement Funds to Class Members

The amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the average value of each Class Member's account during the Class Period. *See* Muhic Decl. ¶30, and Exhibit 1.B to Muhic Declaration (Plan of Allocation). Class Members do not need to do anything affirmatively to receive payment under the Settlement. For those with active accounts in the Plan, their accounts will automatically be credited the amount due to them under the Settlement. As for Authorized Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts, a check will be mailed to them as long as the payment equals or exceeds the De Minimis Amount of $10, which was set in light of the increased mailing and additional expenses associated with issuing paper checks. Muhic Decl. ¶31.

### 3.    Payment of Case Contribution Awards

At Final Approval, Plaintiffs will ask the Court to approve Case Contribution Awards to be paid out of the Settlement Fund to compensate the two named Plaintiffs for their time and efforts serving as class representatives and the relief their efforts have delivered to the Class. Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed during the years of motion practice and litigation, monitored the progression of the case, provided information about their experiences, and approved of the proposed settlement. *Id*. ¶¶ 14, 34, 47. Plaintiffs will seek contribution awards of $7,500 each for Plaintiffs Bozzini and Gonzales. Consistent with awards regularly granted under similar circumstances, the named Plaintiffs should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this Action.

### 4.    Payment of Attorneys' Fees, Costs, and Expenses

To date, Class Counsel collectively have expended approximately 750 hours working on behalf of Plaintiffs and the Class to bring about this Settlement. *Id*. ¶32. The lodestar value of this time is approximately $570,000. *Id*. Because preliminary approval has yet to be granted and notice issued, Class Counsel reasonably expect to dedicate up to 100-150 hours or more, depending on circumstances, to handle preliminary approval issues and a hearing if necessary, working with the Settlement Administrator to effectuate Notice and respond to Class Member inquiries, prepare pleadings for Final Approval of the Settlement, appear and present at the Final Fairness Hearing, and address additional administrative issues and Class Member inquiries after final approval. *Id*. At Final Approval, Class Counsel anticipates seeking an award of attorneys' fees of up to one-third of the common fund established by the Settlement ($600,000), plus the reasonable and necessary expenses advanced by Class Counsel and carried for the duration of the litigation. *Id*. Class Counsel prosecuted the Class Action on a contingent basis and advanced all associated costs out-of-pocket with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class. *Id*. ¶33. By the time of the Final Fairness Hearing, Class Counsel's lodestar will easily exceed the requested attorneys' fees, which means there will be a negative (or sometimes called "fractional") multiplier if the requested fees are awarded. *Id*. 32.

Class Counsel will also seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation. These expenses include expert consulting fees of nearly $30,000, filing fees, and mediation costs and travel expenses. The total expenses are expected to be $55,000 or less. *Id*. ¶33.

### 5.    Any Uncashed Checks Will Be Utilized to Benefit Plan Participants

Any checks issued to persons without an Active Account pursuant to this Plan of Allocation shall expire one hundred twenty (120) calendar days after their issue date. Exhibit 1, Section 5.5, Exhibit 1.B, Section II, F. All checks that are undelivered or are not cashed before their expiration date shall revert to the Settlement Fund any amounts remaining after distributions shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants. Exhibit 1., Section 5.5. There shall be no reversion to Defendants. *Id*.

**D.      Approval of Settlement Terms by an Independent Fiduciary**

As an additional means of confirming the fairness, reasonableness, and adequacy of the Settlement, and to facilitate the Plan's release of claims under the Department of Labor's regulations pertaining to prohibited transactions, pursuant to the Settlement Agreement, Defendants shall retain an Independent Fiduciary to review and determine whether to approve and authorize the Settlement on behalf of the Plan and Class Members. *See* Exhibit 1, Article 2. Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall provide the Independent Fiduciary with sufficient information so that the Independent Fiduciary can review and evaluate the Settlement and each of the related applications. *Id.* at Section 2.1.4. Furthermore, the Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination. *Id.* at Section 2.1.1.

**E.      Settlement Administration**

The selected Settlement Administrator is Analytics, LLC ("Analytics"), a settlement administrator with over 50 years of experience administering class action settlements. *See* Muhic Decl. ¶35. Class Counsel has worked successfully with Analytics on several other ERISA and/or other complex class action cases. *Id*. Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Class Notice postcard to Settlement Class members using addresses from employment records and documents associated with the Plan. *Id.* ¶36. Analytics will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. *Id.* This type of notice is presumptively reasonable. *See New England Biolabs, Inc*., 2022 WL 20583575, at *4 (D. Mass. 2022) (finding "Notice provided by first class mail is sufficient when the names and addresses of the class members are known."). Additionally, Analytics will establish a settlement website providing Settlement Class members with important case documents, including the long-form Notice, relevant pleadings, the complete Settlement Agreement with Exhibits, and other pertinent information, including contact information for the Settlement Administrator, Class Counsel, and Defense counsel. *See* Muhic Decl. *¶36.*

**F.      Dissemination of Notice to The Class**

No later than thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall cause to be sent via U.S. Mail to each Class Member identified on the Class Member List a Settlement Notice (in substantially the form attached to the Agreement as Exhibit E), and simultaneously post to the Settlement Website the long form of the Settlement Notice (in substantially the form attached to the Agreement as Exhibit A). The Notice includes Class Counsel's contact information and the Settlement Website information, which will list key deadlines and links to the long-form Notice, the Preliminary Approval Order, motions for preliminary approval, final approval, and applications for attorneys' fees, expenses, and case contribution awards, the SAC, and other important documents in the case. *See* Exhibits 1.A and 1.E. In addition, the Notice will include the date and time of the final approval hearing, and notification that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed. *Id.*

Defendants shall use reasonable efforts to provide necessary information to the Settlement Administrator so that it may effectuate Notice, implement the Plan of Allocation, and distribute the Settlement Funds. *See* Exhibit 1, at Sections 8.2. As many Class Members are expected to have Active Accounts, a significant number of Settlement Class members will be easily reached through their contact information associated with those accounts, while Class Members without Active Accounts should be reachable through the forwarding information provided to the Plan's recordkeeper when their accounts were closed.

No later than 10 calendar days after the filing of the motion for preliminary approval of the Settlement, Defendants will serve the Class Action Fairness Act Notice on the Attorney General of the United States, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715. *See* Exhibit 1, at Sections 2.6.

**G.      Opportunity to Object**

Class Members shall be permitted to object to any aspect of the Settlement. Exhibit 1, at Sections 2.2.7, 2.2.8. The Class Notice shall provide instructions and requirements for Class Members to object to the Settlement. *See* Exhibit 1.A, at Section 15. To be filed validly, the objection and any

1    notice of intent to participate or supporting documents must be filed or postmarked at least twenty-

2    eight (28) calendar days prior to the scheduled Fairness Hearing. *See* Ex. A, at Section 2.2.8. Any

3    Class Member who files and serves a written objection may also appear at the Fairness Hearing either

4    in person or through qualified counsel retained at their own expense. *Id.*, at Section 2.2.9.

         **H.    The Court Retains Jurisdiction**

5        The Settlement Agreement provides that the Court shall retain jurisdiction as to all matters

6    relating to administration, enforcement, and interpretation of the Settlement Agreement. *See* Exhibit

7    1 at Section 14.11.

8

9    **IV.    ARGUMENT**

10       Approval of a settlement under Rule 23 involves a two-step process: "First, the Court decides

11   whether the class action settlement deserves preliminary approval. Second, after notice is given to

12   class members, the Court determines whether final approval is warranted." *Vikram v. First Student

     Mgt., LLC*, No. 17-CV04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).

13       "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v.

14   Serenity Transp., Inc.*, No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation

15   omitted). "The Court cannot [ ] fully assess [fairness] factors until the final approval hearing." *De

16   Leon v. Ricoh USA, Inc.*, No. 18-CV-03725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019). In

17   addition, when presented with a proposed settlement, a court must determine whether the proposed

18   settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure

19   23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Here, the Court can find that

20   certification of a settlement class is appropriate and that the terms of the proposed settlement are fair

     and reasonable.

21       **A.    The Court Will Be Able to Certify the Class for Purposes of Settlement**

22       Class certification under Rule 23 has two primary components: a proposed class must meet

23   the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *See

     id.*; Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1022 (9th Cir. 1998).

24       While ERISA representative actions are ideally suited for class action treatment, when

25   "[c]onfronted with a request for settlement-only class certification, a district court need not inquire

26

whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620. A class action is the prevailing procedural vehicle by which retirement plan participants bring representative actions under ERISA §502(a)(2), and courts routinely certify classes bringing ERISA breach of fiduciary duty claims. In doing so, a court "must consider whether the Settlement Agreement 'provides preferential treatment to any class member.'" *Philips v. Munchery Inc.*, No. 19-CV-00469, 2020 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09- 00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)). Here, everyone is treated equally fair under the Settlement.

### 1. The Settlement Class Satisfies Rule 23(a)

#### a. Numerosity

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability is not impossibility, and instead refers only to the 'difficult or inconvenience of joining all members of the class.'" *Foster v. Adams & Assocs., Inc.* 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) (finding that this factor was "easily satisfied" with 2,766 vested plan participants) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). While no specific number is needed to maintain a class action, courts in this Circuit have made clear that a class greater than 40 often satisfies the requirement. *See id.* (citing *Rites v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012)). Here, the Settlement Class is estimated to exceed 70,000 current and former. Muhic Decl. ¶30. Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

#### b. Commonality

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Foster*, 2019 WL 4305538, at

*3 (citations omitted). Ultimately, commonality only asks the court to look "for some shared legal issue or common core of facts" and "requires the plaintiff to demonstrate the class members have suffered the same injury." *Id.* (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Here, Plaintiffs claim Defendants breached fiduciary duties owed to the Plan under ERISA § 404, 29 U.S.C. § 1104, and brought the Action in a representative capacity under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan. Indeed, Plaintiffs' "br[ought] suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y Jan. 22, 2019). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id.*; *see also* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan") (emphasis added).

The overarching questions of law and fact applicable to all Plan participants include whether the recordkeeping fees were unreasonable and whether Defendants breached fiduciary duties owed to the Plan and its participants by failing to prudently monitor and control the fees. All Plan participants were impacted by the Committee's monitoring and decision-making processes. *See, e.g., Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (finding commonality where injury stemmed from whether defendants breached their fiduciary duties to the Plan through their decision-making). Since the central allegations here concern Defendants' administration of the Plan, they are common to all Plan participants who are empowered to bring an action on behalf of the Plan. *See, e.g., Kanawi*, 254 F.R.D. at 109.

### c. Typicality

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. See Fed. R. Civ. P. 23(a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Kanawi*, 254 F.R.D. at 110 (citing *Hanon v. Dataproducts Corp.*, 976 15    F.2d   497,   508 (9th Cir.1992) (internal quotation marks omitted)). Like commonality, typicality is a "permissive"

standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id*. Since claims under ERISA § 502(a)(2) are inherently representative claims, any participant's claim is necessarily typical of the claims of the Class; this is because every participant is asserting the Plan's claim. Indeed, Plaintiffs brought this Action on behalf of the Plan, such that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum v. R.J. Reynolds Tobacco Co*., 254 F.R.D. 59, 66 (M.D.N.C. 2008).

Courts routinely find a retirement plan participant's breach of fiduciary duty claim to be typical of the claims of all participants in such a plan. *See Kanawi*, 254, F.R.D. at 110 (typicality met for fiduciary breach claims because "[n]one of the facts or legal claims are unique to the named Plaintiffs[]" since "[t]he complaint is based on allegations and recovery that address the Plan as a whole, not individual claimants"); *Cunningham*, 2019 WL 275827, at *7 (typicality requirement met where plaintiffs "sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class); *Sacerdote v. New York Univ*., 2018 WL 840364 at *3 (S.D.N.Y. Feb. 13, 2018) (noting that analysis of the typicality factor is similar to the commonality analysis and finding because "[e]ach named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance."). The circumstances in this Action, in which Plaintiffs alleged fiduciary breaches arising out of Defendants' purported management and administration of the Plan, are no exception. Defendants' Plan-wide alleged misconduct is of a kind routinely found to support determinations of typicality. *See, e.g.*, *Clark*, 2018 WL 1801946 at *5.

### d.    Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." FED. R. CIV. P. 23(a)(4). This inquiry analyzes "whether any conflicts of interest exist between the named plaintiffs and the class members" and "whether the named Plaintiffs' counsel will adequately protect the interests of the class." *Kanawi*, 254 F.R.D. at 109.

Plaintiffs' interests are tightly aligned with all other members of the proposed Class by virtue of the very nature of the claims that they bring. Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendants owed to the Plan and to recover the damages due to them. *See* 29

U.S.C. §§ 1109(a), 1132(a)(2); *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S 134, at 142 n.9 (1985) "There is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citation omitted) (quoting FED. R. CIV. P. 23(a)(4)). "The general rule that there is 'a relatively low likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan, not to individual Plaintiffs, holds true here." *Beach v. JPMorgan Chase Bank, N.A.,* 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (quoting *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017)); *see also Kanawi*, 254 F.R.D. at 111. Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' interests and the interests of the proposed Class. Indeed, Plaintiffs and Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *See Kanawi*, 254 F.R.D. at 110 *see also Moreno v. Deutsche Bank Ams. Holding Corp*, 2017 WL 3868803, at *7 (S.D.N.Y. Sept. 5, 2017) (finding adequacy and certifying class that alleged excessive recordkeeping fees because "Plaintiffs and the putative class members share an interest in remedying any alleged mismanagement of the Plan"); *West v. Continental Automotive, Inc.,* 2017 WL 2470633, at *2 (W.D.N.C. June 7, 2017) ("[T]here is no evidence of a direct conflict of interests between named Plaintiffs and the class they seek to represent.").

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs here easily surpass. *See Surowitz v. Hilton Hotels Corp*., 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of the Class and have achieved a very favorable result, which does not favor any members of the Settlement Class at the expense of others. Plaintiffs have represented, and will continue to adequately represent all members of the Settlement Class. Muhic Decl. ¶¶14, 34, 47.  In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail below. *See, e.g., Bailey v. Verso Corp*., 2021 WL 5815727 (S.D. Ohio Dec. 24, 2021) (finding that the adequacy requirement satisfied by class counsel who were "experienced ERISA litigators" and had "administered the settlement of numerous retiree-benefit class actions").

## 2.     The Settlement Class Satisfies Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613-14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. *See, e.g., Moreno, 2017 WL 3868803, at* * (certifying settlement class under Rule 23(b)(1) and finding "Defendants' alleged conduct was uniform with respect to each participant"); *Karpik v. Huntington Bancshares, Inc.,* 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (noting that cases involving allegations of fiduciary breaches to a trust or plan[] are precisely the type of cases that are encompassed by" Rule 23(b)(1); *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 833-34 (1999) (calling breach of trust actions a "classic example" of a Rule 23(b)(1) class); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *4 (S.D. Ohio Sept. 30, 2008) ("courts have routinely found that class certification is appropriate under Rule 23(b), and most usually 23(b)(1)" in ERISA breach of fiduciary duty cases). Actions under ERISA §§ 409 and 502(a)(2) for breach of fiduciary duty present a "paradigmatic example" of a Rule 23(b)(1) class. *Kanawi*, 254 F.R.D. at 111-12 (citations omitted); *see also Foster,* 2019 WL 4305538, at *7 ("Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.") (citations omitted). Certification here is appropriate under either subpart of Rule 23(b)(1). *See Clark*, 201 WL 1801946, at *9-*10 (finding that plaintiffs established basis for certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B)).

## 3.     Appointment of Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

(i)     the work counsel has done in identifying or investigating potential claims in this action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action;

(iii)     counsel's knowledge of the applicable law; and

(iv)     the resources counsel will commit to representing the class.

*See* Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel satisfy all of these factors. *See* Muhic Decl., ¶¶14, 19, 38-48. To date, Class Counsel has leveraged their experience and resources to vigorously pursue recovery on behalf

of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing several motions, engaging in the discovery, and forcefully advocating Plaintiffs' interests to obtain a very favorable resolution through mediation. *Id.* at ¶¶14, 19, 48. Class Counsel also have extensive experience litigating ERISA fiduciary breach cases and overseeing the administration of settlements in ERISA and other complex class actions. *Id.* at ¶¶40-47. Class Counsel will continue to leverage their wealth of relevant experience and resources on behalf of the Settlement Class through final resolution, including addressing inquiries from members of the Settlement Class and supervising the work of the Settlement Administrator. Accordingly, the Court should appoint Plaintiffs' counsel as Class Counsel.

**B.    The Settlement, Notice Plan, And Plan of Allocation Warrant Preliminary Approval**

**1.    The Settlement Should Be Preliminarily Approved**

"To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate." *Urakhchin v. Allianz Asset Mgt. of Am., L.P.*, SACV151614, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (citing Fed. R. Civ. P. 23(e)(2)). In determining whether a settlement meets these requirements, courts look to factors including the strength of the claims and defenses, the risk, expense, and complexity of continued litigation, the stage of proceedings and extent of discovery completed, and the experience and views of class counsel. *Id.* The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Id.* (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

Although Plaintiffs believe there is strong legal and factual support for their claims, there is inherent risk in taking complex ERISA claims to trial. Trial presentations rely heavily on competing expert testimony, and given that Plaintiffs bear the burden of proving both liability and damages, success at trial is by no means guaranteed. In addition, regardless of the outcome of a trial, the non-prevailing party likely would appeal, resulting in further delay and uncertainty, and requiring both

sides to expend considerably more resources in seeking finality. Accordingly, the proposed Settlement recognizes these risks. *See Urakhchin*, 2018 WL 3000490, at *4.

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.,* No. 15-CV-02198, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto,* No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). That is what happened here, where Class Counsel recommend the proposed Settlement after significant arm's-length negotiations conducted through a highly experienced mediator. Muhic Decl. ¶¶22-24  Class Counsel conducted substantial review and analysis of numerous documents. *Id.* ¶¶ 18, 19. "Discovery can be both formal and informal" and, here, Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have undertaken extensive additional review of materials and information. *See Urakhchin*, 2018 WL 3000490, at *4. 140, 141. Plaintiffs no doubt faced meaningful challenges in their pursuit of a recovery on behalf of the Plan—even setting aside the additional complexity and delay of likely appeals—which strongly supports the preliminary approval of the Settlement. *See Urakhchin*, 2018 WL 3000490, at *4.

Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.,* No. 15-CV-04348-MEJ, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel."). "'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Urakhchin*, 2018 WL 3000490, at *5 (quoting *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) and granting preliminary approval)). This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073, at *13 (D.N. Mar. Is. May 10, 2002); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that settlements that are "the result of arms'-length negotiations among experienced counsel" weigh in favor of preliminary approval.). The Settlement

provides a substantial monetary recovery of $1,800,000. Further, the Parties will submit the Settlement and related applications for fees and expenses to an independent fiduciary retained on behalf of the Pla, to provide an opinion on the Settlement's fairness before the final fairness hearing. *See* Muhic Decl. ¶37.

"Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Johnson v. Serenity Transp., Inc.,* No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted); *Etter v. Allstate Ins. Co.,* No. C 17-00184, 2018 WL 5761755, at *1 (N.D. Cal. May 30, 2018) (stating same).

With the assistance of consultants, Plaintiffs estimated the maximum potential damages in this Action to be approximately $7.37 million. *See* Muhic Decl. ¶27. While this figure is defensible, the likelihood of proving these maximum damages would be challenging for Plaintiffs, particularly because Defendants would assuredly challenge the damages calculations in addition to strongly arguing that they at all times adhered to a prudent process in monitoring the recordkeeping fees paid by the Plan.

The $1,800,000 Settlement represents roughly 24.4% of Plaintiffs' maximum damages, which exceeds the accepted range of recovery in class action settlements across the country and in this district. *See*, e.g. *Miguel v. Salesforce.com Inc.* No. 3:20-cv-01753-MMC, Dkt. 199 (N.D. Cal. April 4, 2025) (granting final approval of ERISA class settlement recovering approximately 13.5% of maximum calculated damages); *Fleming v. Impax Lab'ys Inc*., 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.,* 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery); *In re Lithium Ion Batteries Antitrust Litig.,* 2017 WL 1086331, at *4 (N.D. Cal. 2017) (overruling objections to settlement amount representing between 2.2% to 11.2% of total possible damages); *Deaver v. Compass Bank,* 2015 WL 8526982, at *7 (N.D. Cal. 2015) (settlement recovering 10.7% of total damages).

In sum, the Settlement is the product of vigorous litigation efforts and arm's-length negotiations by experienced and well-informed counsel, adequately reflects the strength of the Parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### 2.    The Notice Plan Should Be Preliminarily Approved

In conjunction with preliminarily approving a proposed class settlement, courts must approve the proposed means of notifying class members of the settlement. *See* FED. R. CIV. P. 23(I)(2). Due process and Rule 23(e) do not require that each class member receive actual notice, but rather that class notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004).

Here, the proposed plan for the distribution of Notice is designed to reach the largest number of Settlement Class members possible. The postcard Notice will be sent by first-class mail to the last known address of each Settlement Class member, and the long-form Notice along with all other pertinent information and copies of the Settlement Agreement and pleadings will be published on a dedicated website for the Settlement. *See* Exhibit 1, Section 2.5; *see also Peters v. Nat'l R.R. Passenger Corp*., 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"). Notably, all Settlement Class members had Plan accounts, so the Plan's recordkeeper has addresses and other identifying information for the Settlement Class.

The postcard and long-form Notice provide Settlement Class Members the information they need to understand the terms of the Settlement and the settlement process. *See* Exhibits 1.A and 1,E, ("Notice"). The Notice is easily understandable and, significantly, provides:

1. Contact information for class counsel to answer questions.

2.   The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case.

3.   Instructions on how to access the case docket via PACER or in person at any of the court's locations.

4.   The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class.

5.   A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed

Further, the Notice describes the case and the Settlement terms, identifies the dollar amount of the Settlement, the amount Class Counsel is requesting in fees and case contribution awards, the claims released by Settlement Class Members, and objection rights and procedures. In addition, the Notice, Settlement Agreement, preliminary and final approval motions and related applications, and other litigation documents will be posted on the Settlement Website. *See* Exhibit 1, Section 13.2

In light of the above, the proposed form and manner of Notice should be approved because it satisfies all due process considerations and meets the requirements of Rule 23(e).

### 3.   The Plan of Allocation Should Be Preliminarily Approved

Courts within this District hold that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, No. 17-CV-02185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted). Here, the Plan of Allocation provides recovery to members of the Settlement Class on a pro rata basis according to the total value of the investments in their accounts during the Class Period, with no preferential treatment for the Class Representatives or any segment of the Settlement Class. *See* Exhibit 1.B (Plan of Allocation) at § C. A pro rata distribution based on each class member's loss relative to that of the class as whole "has frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases). Substantially equivalent allocation plans have been approved by

this Court and others in analogous ERISA litigation. *See, e.g., Miguel v. Salesforce.com Inc.* No. 3:20-cv-01753-MMC, Dkt. 199 (N.D. Cal. April 4, 2025) (approving substantially similar pro rata plan of allocation for class members based on account values); *Terraza v. Safeway Inc.,* No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("[s]ettlement Scores will be determined by calculating the Class Member's year-end asset amounts in the Plan during the Class Period"); *see also Barcenas v. Rush Univ. Medical Ctr.*, No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) (approving substantially similar pro rata plan of allocation in analogous ERISA breach of fiduciary duty action); *Karpik*, 2021 WL 757123, at *2 (approving a plan of allocation distributing the settlement fund on a pro rata basis). The Allocation Plan also provides procedures for the Settlement Administrator to identify and compensate former participants and beneficiaries or alternate payees who no longer have active accounts. *See* Exhibit 1.B, at § II.F.

In light of the equitable treatment of Class Members, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

## V.    CONCLUSION

In light of the above, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for the Fairness Hearing.

Dated: October 30, 2025

/s/ Peter A. Muhic

Peter A. Muhic
(*Admitted Pro Hac Vice*)
**MUHIC LAW LLC**
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Phone: (856) 324-8252
Email: peter@muhiclaw.com

James A. Clark (SBN 278372)
Renee P. Ortega (SBN 283441)
**TOWER LEGAL GROUP, PC**
11335 Gold Express Drive, Ste. 105
Gold River, CA 95670

Telephone: (916) 361-6009
Email: james.clark@towerlegalgroup.com
Email: renee.ortega@towerlegalgroup.com

Edwin J. Kilpela, Jr.
Paige T. Noah
**WADE KILPELA SLADE LLP**
6425 Living Place
Suite 200
Pittsburgh, PA 15206
412-314-0515
ek@waykayslay.com
pnoah@waykayslay.com

Paul Sharman
**The Sharman Law Firm LLC**
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
(678) 242-5297
paul@sharman-law.com