**TOWER LEGAL GROUP, P.C.**
James A. Clark (SBN 278372)
Renee P. Ortega (SBN 283441)
11335 Gold Express Drive, Ste. 105
Sacramento, CA 95670
Telephone: (916) 361-6009
Facsimile: (916) 361-6019
Email: james.clark@towerlegalgroup.com
Email: renee.ortega@towerlegalgroup.com
*Counsel for Plaintiffs*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERA BOZZINI and ADRIAN GONZALEZ, individually, and as representatives of a Putative Class of Participants and Beneficiaries, on behalf of the FERGUSON ENTERPRISES, LLC 401(K) RETIREMENT SAVINGS PLAN f/k/a FERGUSON ENTERPRISES, INC. 401(K) RETIREMENT SAVINGS PLAN, <br><br> *Plaintiffs*, <br><br> v. <br><br> FERGUSON ENTERPRISES, LLC f/k/a FERGUSON ENTERPRISES, INC.; RETIREMENT PLAN COMMITTEE OF FERGUSON ENTERPRISES, LLC 401(K) RETIREMENT SAVINGS PLAN; and DOES 1-50, <br><br> *Defendants*. | Case No. 3:22-cv-05667-AMO <br><br> **PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:      TBA <br> Time:      TBA <br> Location:  San Francisco Courthouse <br>             Courtroom 10 <br>             Hon. Araceli Martinez-Olguin |

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND REVISED MOTION

**PLEASE TAKE NOTICE** that Plaintiffs, Tera Bozzini and Adrian Gonzalez, on behalf of the proposed Settlement Class and the Ferguson Enterprises, LLC 401(k) Retirement Savings Plan (the "Plan"),[1] hereby submit this revised motion (the "Motion") before this Honorable Court pursuant to Federal Rule of Civil Procedure 23 for entry of an Order that: (1) preliminarily approves the Settlement Agreement with Defendants and Plaintiffs (collectively, the "Parties");[2] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan; and (4) sets a final approval hearing on a date convenient for the Court at least 120 calendar days after the entry of a preliminary approval order.

A proposed Preliminary Approval Order is attached as **Exhibit C** to the Settlement Agreement. The proposed Settlement Class is defined as follows:

> All persons who were participants in or beneficiaries of the Plan at any time between September 30, 2016, through [DATE OF PRELIMINARY APPROVAL] (the "Class Period"), and any Alternate Payee of a Person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period.

Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems a Hearing necessary, on 06/04/26, or the earliest date convenient for the Court |
| Settlement Administrator to set up settlement website and toll-free number | ¶¶ 12, 13 | Within 30 days of entry of Preliminary Approval Order |
| Mail Settlement Notice | ¶ 11 | Within 30 days of entry of Preliminary Approval Order |

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party.  Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

[2] The Settlement Agreement and its Exhibits are attached to the accompanying Declaration of Peter A. Muhic as Ex 1. The Letter Agreement modifying the Plan of Allocation is Ex. 5 to Muhic Decl. Terms not defined herein shall have the same meaning as in the Settlement Agreement.

| Final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 18 | 45 days before Final Fairness Hearing |
|---|---|---|
| Independent Fiduciary report | Settlement Agreement ¶ 2.1.2 | Not later than 30 days before the Final Fairness Hearing |
| Deadline for filing of objections | ¶ 20 | Not later than 28 days before the Final Fairness Hearing |
| Deadline for Parties to file response to objections or file any additional papers in support of Settlement | ¶ 23 | Not later than 5 days before Final Fairness Hearing |
| Final Fairness Hearing | ¶ 2.2.6 | On a date convenient for the Court no sooner than 120 days after the date the Preliminary Approval Order is entered |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the supporting revised Declaration of Peter A. Muhic ("Muhic Decl.") and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider. Plaintiffs respectfully submit that the proposed settlement memorialized in the Settlement Agreement (the "Settlement") is fair, reasonable, and adequate, and should be preliminarily approved and the proposed notice provided to the Settlement Class.

The Settlement is the product of arm's-length, vigorous negotiations between the Parties utilizing an experienced mediator. Counsel for the Parties are well-informed regarding all the issues in this litigation, and have significant experience in complex litigation of this type.

Pursuant to the inquiries provided in the Procedural Guidance for Class Action Settlement of this District,[3] and this Court's Order dated January 26, 2026 (Dkt. No. 144), Plaintiffs provide the following information, as well as additional information in the accompanying memorandum and declarations.

---

[3] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:22-cv-05667-AMO
-2-

## (1) INFORMATION ABOUT THE SETTLEMENT

1. **Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.**

No change except that the Class Period is defined to run through the date of entry of the Preliminary Approval Order, rather than the open-ended "date of judgment" as defined in the complaint. This date certain is necessary so that the Class Members can be identified and receive notice of the proposed Settlement prior to the Final Fairness Hearing.

2. **Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.**

None. The Settlement includes the claim in the operative Complaint (Dkt. No. 106) that survived Defendants' motions to dismiss. The claim is for alleged excessive recordkeeping fees.

3. **The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.**

The gross monetary recovery to the Class under the settlement is $1,800,000. Had Plaintiffs prevailed in subsequent summary judgment and Daubert motions that certainly would have been filed, and then fully prevailed in a trial, Plaintiffs' damages estimates ranged from approximately $4.77 million to $7.37 million at the most aggressive and optimistic end. *See* Muhic Decl. ¶27. Accordingly, the Settlement represents an immediate and certain recovery of 24.4% to 37.7% of Plaintiffs' estimated damages. Defendants at all times denied liability, and asserted that they had a prudent process in place for monitoring recordkeeping fees. Nevertheless, Defendants preliminarily asserted that even under Plaintiffs' best-case scenario the maximum damages would be approximately $2.16 million. *Id*. As shown below, and in the text and table in Section IV.B.1. of the accompanying memorandum, given the risks of litigation and obstacles to recovery, this recovery represents a very favorable result for the Class.

The relief under the Settlement is particularly justified given the significant risks of litigation and hurdles that Plaintiffs would face at summary judgment and trial. *See, e.g., Iannone v. AutoZone Inc.*, No. 2:19-cv-02779 (W.D. Tenn. Sept. 30, 2025 ) (finding in favor of defendants after bench trial on ERISA prudence claims); *Waldner v. Natixis Investment Managers, L.P.*, No. 21-10273-LTS, 2025 WL 1871290 (D. Mass. June 26, 2025) (entering judgment for ERISA defendants after two week bench trial on prudence and loyalty claims); *In Re: Prime Healthcare ERISA Litig.*, Case No. 8:20-cv-1529-JLS-JDE, 2024 WL 3903232 (C.D. Cal. August 22, 2024) (entering judgment after bench trial in favor of ERISA defendants on all recordkeeping and investment claims); *Lucas v. MGM Resorts International*, 724 F.Supp.3d 1142 (D. Nev. 2024) (striking plaintiff's expert and granting partial summary judgment for ERISA defendants on prudence claims); *In re Quest Diagnostics Inc. ERISA Litig.*, No. 20-07936, 2024 WL 4285163 (D.N.J. Sept. 25, 2024) (granting summary judgment upon finding ERISA defendants acted prudently as a matter of law); *Nunez v. B. Braun Medical Inc.*, No. 5:20 cv 04195 (E.D. Pa. Aug. 18, 2023) (concluding after bench trial that the Retirement Committee had an objectively prudent process for selecting and monitoring investments and record-keeping fees).

The Settlement guarantees immediate and significant monetary relief to the Class, as opposed to further extended litigation with an uncertain outcome. Notably, the percentage of potential damages recovered is well within the range found to be reasonable by other courts in this District evaluating similar settlements. *See, e.g., Tobias v. NVIDIA Corp.*, 4:20-cv-06081-JST (N.D. Cal. Dec. 18, 2025) (granting final approval of ERISA class settlement where recovery was 18.3% - 19.1% of estimated damages); *Miguel v. Salesforce.com Inc.* No.  3:20-cv-01753-MMC, Dkt. 199 (N.D. Cal. April 4, 2025) (granting final approval of ERISA class settlement recovering approximately 13.5% of maximum calculated damages) .

Further discussion regarding the damages analysis and recovery is provided in the supporting memorandum. *See* Memorandum of Law in Support, Section IV.B.1.

Lastly, there is no injunctive relief given the monetary payment and the fact that Defendants agreed prior to the Settlement to conduct a request for proposal ("RFP") for recordkeeping services in order to competitively test its fees in the current marketplace.

**4. Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.**

None. There are no other cases impacted by this Settlement.

**5. The proposed allocation plan for the settlement fund.**

The amount paid to each Class Member will be a pro-rated allocation of the Net Settlement Amount, as set forth in the proposed Plan of Allocation, and is based on the average account balance of each Class Member's account during the relevant period. This is fair and reasonable because it distributes the recovery in accord with how the Class Members paid the recordkeeping fees. Similar pro-rata allocations have been widely approved in these types of cases.  To address the concerns raised by the Court in its January 26, 2026 Order (Dkt. No. 144), instead of no payments being issued for losses of $9.99 or less, the Plan of Allocation has been modified to provide for a guaranteed *de minimis* payment of $5.00 to all Class Members who incurred damages of $.01-$4.99.[4] All others receive their pro rata share above $5.00. Further details are provided in Plaintiffs' accompanying memorandum, and the revised proposed Plan of Allocation, which is attached as Exhibit B to the Settlement Agreement.

**6. If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples, etc.**

There is no claim form. All payments are automatically issued to Class Members either by a direct contribution to their retirement account if they are still a participant in the Plan, or by check if they are a former participant who no longer has an active account in the Plan.

---

[4] Given claim processing and transaction costs, it is economically inefficient to distribute individual payments of less than $5 to Class Members whose loss calculations were $4.99 or less, and therefore, the guaranteed *de minimis* payment for anyone with calculated losses of $.01-$4.99 is $5.00.

7. **In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate**.

There is no reversion of any funds to Defendants. To the contrary, should there be any residual funds after distributions are completed, the monies go to the direct benefit of the Class by being transferred to the Plan's expense account to pay for recordkeeping/administrative expenses that otherwise would be paid by the Class Members/Plan participants.

**QUESTIONS/ISSUES PRESENTED IN COURT'S JANUARY 26, 2026 ORDER**

The Court raised issues regarding certain provisions of the Settlement Agreement and/or Plan of Allocation, which Plaintiffs address below:

**3.1.8    That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation, as approved by the Court, and as administered by the Settlement Administrator;**

This provision is fundamental to the administration of the Settlement and is meant to ensure that the Settlement is effected in accordance with the written terms of the Plan itself, and pursuant to the Plan of Allocation and all applicable laws. The proposed Settlement Administrator, Analytics LLC ("Analytics"), is the expert in handling massive amounts of data and calculating class member payments, having administered thousands of class settlements, including scores of ERISA settlements. *See* Simmons Decl., attached as Ex. 2  to Muhic Decl. To be sure, none of the counsel for the Parties, nor the Parties themselves, are nearly as qualified or competent to handle such data-intensive tasks and calculations. Therefore, the Settlement Administrator is entrusted with these critical tasks and responsibilities.

In furtherance of these tasks, under section 3.1.8 of the Settlement Agreement, the Settlement Administrator is the entity that receives all of the Class Member information and data necessary to calculate distributions and, therefore, is the entity ultimately responsible for determining such distributions. Specifically, under section 1.42 of the Settlement Agreement, the Settlement

Administrator will effectuate Notice to the Class, and administer the Settlement in accordance with section 2.3, including receipt of all data for the identification of Class Members and calculations of payments under section 2.4, in accordance with the Plan of Allocation. In conjunction with this, the Defendants are obligated to provide all necessary data to the Settlement Administrator for purposes of effecting the administration of the Plan of Allocation. *See* Agreement, §8.2.1. In accordance with these provisions, the Settlement Administrator is responsible for performing calculations for payments owed to the Class. *Id*., §8.2.3.

In light of the foregoing, section 3.1.8 is a provision necessary for the proper administration of the Settlement.

**3.1.9    That, with respect to any matters that arise concerning the implementation of distributions to Class Members who are Current Participants in the Plan (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan Administrator or other fiduciaries of the Plan, in accordance with applicable law and the governing terms of the Plan;**

This provision makes clear that should an unusual situation arise in connection with the distributions of the Settlement funds—that is not readily addressed by the Settlement Agreement—then the Plan Administrator (not the Settlement Administrator), who is a fiduciary of the Plan (owing duties of prudence and loyalty to the Plan participants) and is the entity most familiar with the Plan itself, in conjunction with other Plan fiduciaries if necessary, must adhere to the terms of the written Plan and "applicable law" (*e.g.*, ERISA) in addressing the issue. This provision reinforces protection for the Class Members, ensures the lawful implementation of the Settlement in accordance with ERISA and in the best interest of the Class Members, and thus, is an important provision in the Settlement Agreement.

**6.4    Defendants will take no position with respect to Class Counsel's application for Attorney's Fees and Costs and Case Contribution Awards so long as consistent with the terms of the Settlement Agreement**.

This provision merely reflects that Defendants are agnostic as to the Plaintiffs' request for fees/costs or the Plaintiffs' service awards as long as Plaintiffs' request does not exceed the upper

limits imposed under the Settlement Agreement. Of course, it will be Plaintiffs' burden to justify any requests for fees/awards in conjunction with the motion for final approval and it will be left to the Court to evaluate the reasonableness and fairness of any such requests.

**7.1    As of the Settlement Effective Date, the Plan (subject to Independent Fiduciary approval as required by Article 2) and the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns), on their own behalf and on behalf of the Plan, shall fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties from the Released Claims, <u>whether or not such Class Members have received or will receive a monetary benefit from the Settlement</u>, whether or not such Class Members have actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and <u>whether or not the objections or claims for distribution of such Class Members have been approved or allowed</u>.** (emphasis added in Court's Order).

First, in light of the Court's concerns expressed in its January 26, 2026 Order, the Parties agreed to revise the Plan of Allocation to provide a guaranteed payment of $5.00 for those incurring a *de minimis* loss of $.01-$4.99. *See* Ex. 1B (Plan of Allocation). With respect to the remainder of section 7.1, this is the essence of Rule 23: Not every Class Member may agree with the Settlement (indeed, some may feel that Defendants should not have paid anything, and others may feel they should have paid more), but fairness is assessed collectively, not individually. Thus, a settlement that the Court determines provides reasonable and adequate relief to the class as a whole may still be fair, despite the objections of some class members. When due process is followed, and a court's judgment is final,  a class-wide release binds the members of the class. This allows a defendant to bargain for resolution and closure, and prevents repetitive or successive litigation of the same claims.

**Plan of Allocation**

The Court raised a concern with **Paragraph D** of the Plan of Allocation. As set forth above, and also in the accompanying memorandum, the Parties have revised this paragraph. Now, instead of no payments being issued in the amount of $9.99 or less, the Plan of Allocation has been modified to

provide a guaranteed payment of $5.00 for those incurring a *de minimis* loss $.01 to $4.99. *See* Exhibit B to Settlement Agreement. Those with calculated losses of $5 or more receive their pro rata amount.

The Court raised concerns with **Paragraphs G-H** of the Plan of Allocation. These paragraphs are intended to address any unforeseen and unusual circumstance where the final calculations for distributions somehow resulted in an aggregate number that exceeded the funds available to be distributed (*i.e.*, the Net Settlement Amount) and give assurance to the Defendants that they are not obligated to pay any more than the Gross Settlement amount to which they agreed. Should such an anomalous event occur (perhaps, theoretically, such as if additional Class Members were identified after distributions were initially calculated) then the Settlement Administrator can recompute the distributions giving effect as near as possible to the language in the Settlement Agreement. The purpose of the provisions is to uphold the intent of the Settlement Agreement.

The Court raised a question with **Paragraph I** of the Plan of Allocation. As discussed in No. 7, *supra*, this paragraph insures that should there be any residual funds after all payments are issued, none will revert to Defendants, but rather, will directly benefit the Class Members by being transferred to the Plan expense account to pay for recordkeeping or other administrative charges that otherwise would be paid by the Plan participants.

**Factual Assertions**

In addition to the revised declaration of attorney Muhic, and to provide further factual predicates in support of the motion, Plaintiffs also submit herewith the declarations of the two Class Representatives, Tera Bozzini and Adrian Gomzalez (attached hereto as Exhibits 3 and 4) and the declaration of Richard W. Simmons, the President of Analytics, LLC (attached hereto as Exhibit 2).

**The Role of the Independent Fiduciary**

The Court questioned why it is appropriate to have an independent fiduciary "approve and authorize the settlement" or why such review should occur after preliminary approval. Dkt. No. 144 at 4. The answer is based on longstanding ERISA principles and Department of Labor ("DOL") guidance. Whenever retirement plan fiduciaries enter into a settlement, the event could technically be considered a prohibited transaction under ERISA. To account for this, the DOL issued Prohibited Transaction Class Exemption 2003-39, as amended (also known as the "Settlement Class Exemption"), which allows the Plan fiduciaries to enter into these settlements if certain safeguards are satisfied. Muhic Decl. ¶¶ 43-44.

The reason for these safeguards is because when the Plan fiduciaries themselves are defendants, they cannot fairly decide whether the plan should release claims against them. The central protection in PTE 2003-39 is that an Independent Fiduciary ("IF")  must review and approve the settlement on behalf of the plan. An IF therefore steps into the role of representing the plan's interests in evaluating whether the settlement is reasonable. Muhic Decl. ¶ 44.

There are several reasons why the IF's review occurs after preliminary approval. To begin, in order to determine whether the Settlement Class Exemption has been met, the IF will typically  review the complaint, any motion to dismiss the Complaint and related papers, the parties' mediation statements, the Settlement Agreement, the Motion for Preliminary Approval and related papers, the Court's Order preliminarily approving the settlement, the Notice, the Plan of Allocation, and the Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award and related papers. The IF then interviews and questions counsel for the parties. If there are issues raised by the IF, counsel for the parties need to address the issues. Muhic Decl. ¶¶ 45-46. Thereafter, the IF prepares a report which the parties file with the Court as part of the settlement final approval process. *See*, *e.g.*, *Miguel v. Salesforce.com Inc.* No.  3:20-cv-01753-MMC, Dkt. No. 195-2 (N.D. Cal. Mar. 7, 2025) (Report of Independent Fiduciary authoring and approving the settlement on behalf of the plan and finding compliance with PTE 2003-39); *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022) ("an independent fiduciary reviewed the proposed settlement and determined not to object to any portion of it after interviewing counsel for both sides, reviewing filings, and researching the case."); *In re Wachovia Corp. ERISA Litig.*, No. 09-cv 262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("The independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy."); *In re Marsh ERISA Litig,*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (finding the approval of the independent fiduciary persuasive in an ERISA case).

The IF's report typically contains a formal evaluation of the terms of settlement, an opinion on whether the release of plan claims is appropriate, confirmation that the settlement benefits the plan relative to litigation risks, and also, the IF's opinion on fees, costs and awards being requested as part of the settlement. The IF's review comes after the terms of settlement are agreed to and preliminarily approved because, otherwise, there is the risk of compromising the IF's role as a non-biased third-

party uninvolved with the bargain negotiated by the parties. Further, the IF's review follows preliminary approval so that all of the aforementioned documents and materials are available, and also, so that any class member objections can be received and considered as part of that review process. Those objections would not be received until after preliminary approval is granted and notice is issued. Lastly, because review and authorization of a settlement by the IF also benefits the Class Members, it is appropriate to pay the IF out of the Gross Settlement Fund.

Accordingly, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order and, if the Court deems necessary, hold a preliminary approval hearing on June 4, 2026, or the earliest date convenient for the Court.

Dated: March 27, 2026                           Respectfully Submitted,

                                                /s/ Peter A. Muhic

                                                Peter A. Muhic
                                                (*Admitted Pro Hac Vice*)
                                                **MUHIC LAW LLC**
                                                923 Haddonfield Road,
                                                Suite 300 Cherry Hill, NJ  08002
                                                Phone:  (856) 242-1802
                                                Email:  peter@muhiclaw.com

                                                James A. Clark (SBN 278372)
                                                **TOWER LEGAL GROUP, P.C.**
                                                11335 Gold Express Drive, Ste. 105
                                                Sacramento, CA 95670
                                                Telephone: (916) 361-6009
                                                Facsimile: (916) 361-6019
                                                Email: james.clark@towerlegalgroup.com

                                                ***Proposed Class Counsel***

                                                Edwin J. Kilpela, Jr.
                                                Paige T. Noah
                                                **WADE KILPELA SLADE LLP**
                                                6425 Living Place, Suite 200
                                                Pittsburgh, PA 15206
                                                412-314-0515

ek@waykayslay.com
pnoah@waykayslay.com

Paul Sharman
**The Sharman Law Firm LLC**
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
(678) 242-5297
paul@sharman-law.com

***Counsel for Plaintiffs***

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    RELEVANT BACKGROUND .....................................................................................1

III.   THE PROPOSED SETTLEMENT ...............................................................................3

       A.   Class Definition ................................................................................................3

       B.   Released Claims ................................................................................................3

       C.   Class Relief .......................................................................................................4

            1.   Settlement Fund .....................................................................................4

            2.   Distribution of Settlement Funds to Class Members..............................4

            3.   Payment of Case Contribution Awards ..................................................4

            4.   Payment of Attorneys' Fees, Costs, and Expenses.................................5

            5.   Any Uncashed Checks Will Be Utilized to Benefit Plan Participants ........6

       D.   Approval of Settlement Terms by an Independent Fiduciary ...............................6

       E.   Settlement Administration....................................................................................6

       F.   Dissemination of Notice to The Class .................................................................7

       G.   Opportunity to Object .........................................................................................8

       H.   The Court Retains Jurisdiction .............................................................................8

IV.    ARGUMENT .................................................................................................................8

       A.   The Court Will Be Able to Certify the Class for Purpose of Settlement ................9

            1.   The Settlement Class Satisfied Rule 23(a) .................................................9

                 a.   Numerosity..................................................................................9

                 b.   Commonality.............................................................................10

                 c.   Typicality ..................................................................................11

d.      Adequacy ....................................................11

2.      The Settlement Class Satisfies Rule 23(b)(1) ...........................12

3.      Appointment of Class Counsel ...............................................13

B.      The Settlement, Notice Plan, And Plan of Allocation Warrant
Preliminary Approval ......................................................14

1.      The Settlement is Fair, Reasonable and Adequate ......................14

2.      The Notice Plan Should Be Preliminarily Approved...................18

3.      The Plan of Allocation Should Be Preliminarily Approved ........19

V.      CONCLUSION ...........................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) .................................................................................................9, 12

*Bailey v. Verso Corp.*
2021 WL 5815727 (S.D. Ohio Dec. 24, 2021)....................................................12

*Barcenas v. Rush Univ. Medical Ctr.*
No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) ...........................................20

*Blackmon v. Zachary Holdings, Inc.*
2022 WL 3142362 (W.D. Tex. Aug. 5, 2022) .....................................................16

*Brown v Mitre Corp.*
22-cv-10976, DKT 114 (D. Mass. Feb. 20, 2025) ..............................................20

*Campbell v. Facebook, Inc.*
951 F.3d 1106 (9th Cir. 2020) ............................................................................14

*Churchill Village, L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ..............................................................................18

*Cunningham v. Cornell Univ.*
2019 WL 275827 (S.D.N.Y Jan. 22, 2019) .........................................................10

*De Leon v. Ricoh USA, Inc.*
2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) ......................................................8

*Does I v. Gap, Inc.*
2002 WL 1000073 (D.N. Mar. Is. May 10, 2002).................................................15

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974) ............................................................................................18

*Etter v. Allstate Ins. Co.*
2018 WL 5761755 (N.D. Cal. May 30, 2018)......................................................16

*Evon v. Law Offices of Sidney Mickell*
688 F.3d 1015 (9th Cir. 2012) ............................................................................10

*Fleming v. Impax Lab'ys Inc.*

2021 WL 5447008 (N.D. Cal. 2021)................................................................................16

*Foster v. Adams & Assocs., Inc.*
2019 WL 4305538 (N.D. Cal. Sept. 11, 2019)...........................................................9, 10

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) .........................................................................................9

*Hanon v. Dataproducts Corp.*
976 15 F.2d 497 (9th Cir.1992) .....................................................................................11

*Harris v. Palm Springs Alpine Estates, Inc.*
329 F.2d 909 (9th Cir. 1964) ...........................................................................................9

*Hefler v. Wells Fargo & Co.*
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...............................................................20

*In re Nexus 6P Prods. Liab. Litig.*
2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ...............................................................19

*In re Omnivision Techs., Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................................................15

*In re Syncor ERISA Litig.*
516 F.3d 1095 (9th Cir. 2008) .......................................................................................14

*Johnson v. Serenity Transp., Inc.*
2021 WL 3081091 (N.D. Cal. July 21, 2021) ............................................................8, 16

*Kanawi v. Betchtel Corp.*
254 F.R.D. 102 (N.D. Cal. 2008) .......................................................................10,  11, 12

*Karpik v. Huntington Bancshares, Inc.*
2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ............................................................12, 20

*Kehrer v. Giant Eagle, Inc.*
No. 2:24-cv-01211 (W.D.Pa.) .......................................................................................16

*Massachusetts Mutual Life Insurance Co. v. Russell*
473 U.S 134 (1985) ........................................................................................................12

*Miguel v. Salesforce.com Inc.*
No. 3:20-cv-01753-MMC, Dkt. No. 199 (N.D. Cal. April 4, 2025) ...........................16, 20

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:22-cv-05667-AMO
-iv-

*Moreno v. Deutsche Bank Ams. Holding Corp*
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ................................................................ 12

*Mullane v. Central Hanover Bank and Trust Co.*
    339 U.S. 306, 314 (1950) ................................................................ 18

*New England Biolabs, Inc.*
    2022 WL 20583575 (D. Mass. 2022) ................................................................ 5

*Ortiz v. Fireboard Corp.*
    527 U.S. 815 (1999) ................................................................ 13

*Peters v. Nat'l R.R. Passenger Corp.*
    966 F.2d 1483 (D.C. Cir. 1992) ................................................................ 19

*Philips v. Munchery Inc.*
    2020 WL 6135996 (N.D. Cal. Oct. 19, 2020) ................................................................ 9

*Rites v. Ariz. Beverages USA, LLC*
    287 F.R.D. 523 (N.D. Cal. 2012) ................................................................ 9

*Shirk v. Fifth Third Bancorp*
    2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ................................................................ 13

*Sims v. BB&T Corp.*
    2019 WL 1995314 (M.D.N.C. May 6, 2019) ................................................................ 16

*Slezak v. City of Palo Alto*
    2017 WL 2688224 (N.D. Cal. June 22, 2017) ................................................................ 15

*Surowitz v. Hilton Hotels Corp.*
    383 U.S. 363 (1966) ................................................................ 12

*Tadepalli v. Uber Techs., Inc.*
    2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ................................................................ 15

*Tatum v. R.J. Reynolds Tobacco Co.*
    254 F.R.D. 59 (M.D.N.C. 2008) ................................................................ 11

*Terraza v. Safeway Inc.*
    No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ................................................................ 20

*Tobias v. NVIDIA Corp.*
    4:20-cv-06081-JST (N.D. Cal. Dec. 18, 2025) ................................................................ 16

*Urakhchin v. Allianz Asset Mgt. of Am., L.P.*
     2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ...............................................................14, 15

*Viceral v. Mistras Grp., Inc.*
     2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ...................................................................15

*Vikram v. First Student Mgt., LLC*
     2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) .....................................................................8

*Villegas v. J.P. Morgan Chase & Co.*
     2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................................................................9

*Wal-Mart Stores, Inc. v. Dukes*
     564 U.S. 338 (2011) .........................................................................................................10

*Walsh v. CorePower Yoga LLC*
     2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ....................................................................15


**OTHER**

28 U.S.C. § 1715 ....................................................................................................................8, 14

29 U.S.C. § 1001 ..........................................................................................................................1

29 U.S.C. § 1104 ........................................................................................................................10

29 U.S.C. § 1109(A) ..............................................................................................................10, 12

29 U.S.C. § 1132(A)(2) ...........................................................................................................10, 12

ERISA § 404 ..............................................................................................................................10

ERISA § 409 ..............................................................................................................................13

ERISA §502(A)(2) .............................................................................................................9, 11, 13

FED. R. CIV. P. 23...............................................................................9, 10, 11, 12, 13, 14, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After substantial motions practice and subsequent negotiations, the Parties have agreed to a proposed settlement ("Settlement") of the putative class action (the "Action"), brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., providing for total monetary relief of one million eight hundred thousand dollars ($1,800,000.00). Based on the valuable relief provided by the Settlement and the risks of continued litigation, Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Plan, while Defendants' Counsel have vigorously defended against Plaintiffs' allegations.  The Parties agreed to the Settlement after multiple rounds of contested motions practice, litigation and arm's-length negotiations by experienced counsel. Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation (including potential appeals) that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, Plaintiffs submit that all prerequisites for preliminary approval of the Settlement (including this District's Procedural Guidance for Class Action Settlements) and certification of the Settlement Class are satisfied. As such, Plaintiffs respectfully request that the Court grant the Motion and direct notice of the Settlement to issue in accordance with the proposed plan for Notice described below.

### II.    RELEVANT BACKGROUND

Plaintiffs Tera Bozzini and Adrian Gonzalez ("Plaintiffs") are participants in the Plan. Dkt. No. 106 ¶¶1, 17-18, 27. The Plan is a defined contribution plan sponsored by Defendant Ferguson. *Id*. ¶¶1, 8, 22, 30. In addition to being the Plan sponsor, Ferguson is also the Plan administrator and has discretionary authority to control the operation, management and administration of the Plan. *Id*. ¶¶24, 60-61.

Plaintiffs filed their initial Class Action Complaint on September 30, 2022. Dkt. No. 1. In response to Defendants' Motion to Dismiss (Dkt. No. 36), Plaintiffs filed their First Amended Complaint ("FAC") on January 30, 2023, alleging eight causes of action against Defendants, for alleged ERISA violations. Dkt. No. 44. Defendants filed their motion to dismiss Plaintiffs' FAC on April 3, 2023 (Dkt. No. 69), and Plaintiffs filed their Opposition on May 22, 2023. Dkt. No. 80. This Court heard argument on the motion to dismiss on October 12, 2023. Dkt. Nos. 93-94. On August 30, 2024, this Court granted, in part, Defendants' Motion to Dismiss Plaintiffs' FAC. Dkt. No. 102.

Plaintiffs filed their Second Amended Complaint on September 27, 2024. Dkt. No. 106. On October 25, 2024, Defendants filed a motion seeking to dismiss only Counts II and III of Plaintiffs' Second Amended Complaint. Dkt. No. 110. On December 5, 2024, Plaintiffs filed their opposition to the motion to dismiss. Dkt. No. 113. On December 23, 2024, Defendants filed a Reply in support of their motion. Dkt. No. 116. On March 3, 2025, Plaintiffs filed a Statement of Recent Decision. Dkt. No. 119. On May 29, 2025, the Court entered an Order dismissing Counts II and III of the Second Amended Complaint, Dkt. 123.

Following discussions between counsel, the Parties agreed on June 4, 2025 to schedule a private mediation of the claims remaining in the case, with the highly experienced mediator, Margaret Levy of ADR Services, Inc.. Muhic Decl. ¶20. Notwithstanding mediation, the Parties agreed that discovery would continue. *Id*. On July 2, 2025, the Court entered a Scheduling Order for mediation and continuance of the Case Management Conference. Dkt. No. 128. On July 24, 2025, Plaintiffs served their First Set of Interrogatories and First Request for Production of Documents. Muhic Decl. ¶17. Thereafter, Defendants made four (4) separate productions of documents, which included their relevant recordkeeping and administrative services agreements, nine years of committee meeting minutes, fee benchmarking reports and other documents, which Plaintiffs reviewed, analyzed and considered, and consulted with their experts, in evaluating the strengths and weaknesses of the Plaintiffs' claims and the Defendants' defenses. *Id*. ¶¶18, 19. The Parties prepared and exchanged

comprehensive mediation memoranda and participated in pre-mediation discussions with the mediator before the formal mediation session. Muhic Decl. ¶22.

On August 11, 2025, the Parties participated in a full day mediation session by videoconference. After substantial debate and discussion, the Parties agreed upon the material terms of settlement. *Id*. ¶23. Thereafter, over the course of several weeks, the Parties carefully negotiated and drafted the formal Settlement Agreement and all ancillary exhibits necessary to effectuate the proposed Settlement. *Id*. ¶23.

On October 30, 2025, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement. Dkt. No. 135. On January 26, 2026, the Court denied the motion without prejudice, and requested the Plaintiffs address certain issues. Dkt. No. 144. In response, among other things, Plaintiffs conferred with Defendants and the Parties agreed to revise the proposed Plan of Allocation to provide for a guaranteed payment of $5.00 for those incurring a *de minimis* loss. *See* Exhibit B to Settlement Agreement, which is Ex. 1 to Muhic Decl. Plaintiffs address the Court's remaining issues in the instant revised motion and memorandum, and also provide declarations of Plaintiffs and Richard W. Simmons, President of Analytics, LLC, in support of the revised motion for preliminary approval of the Settlement.

## III.    THE PROPOSED SETTLEMENT

### A.    Class Definition

The Settlement Class is defined as: all persons who were participants in or beneficiaries of the Plan, at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. *See* Settlement Agreement, attached to Muhic Decl. as Exhibit 1, at Section 1.45. The "Class Period" means the period from September 30, 2016, through the date the Preliminary Approval Order is entered by the Court. *Id*. at Section 1.12.

### B.    Released Claims

If the Court grants Final Approval of the Agreement, the Settlement Class will be deemed to have released Defendants from the claims as described in Section 1.38 and Article 7 of the Agreement. *See* Exhibit 1, Section 1.38, Art. 7. The Agreement makes clear that "Released Claims do not include (a) claims pled in the Action that were dismissed by the Court; or (b) any claims unrelated to this

Settlement, including any claims that the Class Representatives or Class Members may have to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final." *Id.*, §1.38.6.

### C.    Class Relief

#### 1.    Settlement Fund

Defendants have agreed to pay a Settlement Amount of $1,800,000 to resolve Plaintiffs' claims. *Id.*, §1.27. Plaintiffs estimated their potential recoverable damages to range from approximately $4.77 million to $7.37 million. *See* Muhic Decl. ¶27. Accordingly, the Settlement Amount represents 24.4% - 37.7% of Plaintiffs' estimated potential damages, which exceeds the accepted range of recovery in class action settlements across the country and in this district. *Id.*

As set forth in sections 5.1, 5.2, and 5.3 of the Agreement, the Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to current and former participants of the Plan pursuant to the Plan of Allocation; (2) all claims for attorneys' fees and expenses approved by the Court; (3) costs arising from evaluation of the settlement by the Independent Fiduciary (not to exceed $25,000); (4) all costs necessary to administer the Settlement, including, among other things, payment for the services of the Settlement Administrator and any related taxes and tax-related costs (not to exceed $110,000); and (5) payment of Case Contribution Awards to the named Plaintiffs not to exceed $7,500 each. Exhibit 1, at §1.7.

#### 2.    Distribution of Settlement Funds to Class Members

The amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the average value of each Class Member's account during the Class Period. *See* Muhic Decl. ¶30, and Exhibit 1.B to Muhic Declaration (Plan of Allocation). There is no claim form. Class Members do not need to do anything affirmatively to receive payment under the Settlement. For those with active accounts in the Plan, their accounts will automatically be credited the amount due to them under the Settlement. For Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts, a check will be mailed to them. Muhic Decl. ¶31.

#### 3.    Payment of Case Contribution Awards

At Final Approval, Plaintiffs will ask the Court to approve Case Contribution Awards to be paid out of the Settlement Fund to compensate the two named Plaintiffs for their time and efforts

serving as class representatives and the relief their efforts have delivered to the Class. Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed during the years of motion practice and litigation, monitored the progression of the case, provided information about their experiences, and approved of the proposed settlement. *Id*. ¶¶14, 34, 47; *see also* Declarations of Tera Bozzini and Adrian Gonzalez, attached as Exhibits 3 and 4 to Muhic Decl. At the time of final approval, Plaintiffs will move for contribution awards of up to $7,500 for each Class Representative in recognition of their efforts, the benefit they obtained for the Class, and the reputational and other risks they undertook in bringing this Action.

### 4. Payment of Attorneys' Fees, Costs, and Expenses

To date, Plaintiffs' Counsel collectively have expended more than 750 hours working on behalf of Plaintiffs and the Class to bring about this Settlement. *Id*. ¶32. The lodestar value of this time is approximately $600,000. *Id*. Because preliminary approval has yet to be granted and notice issued, Class Counsel reasonably expect to dedicate up to 100-150 hours or more, depending on circumstances, to handle preliminary approval issues and a hearing if necessary, working with the Settlement Administrator to effectuate Notice and respond to Class Member inquiries, prepare pleadings for Final Approval of the Settlement, appear and present at the Final Fairness Hearing, and address additional administrative issues and Class Member inquiries after final approval. *Id*.  At Final Approval, Class Counsel may seek an award of attorneys' fees of up to one-third of the common fund established by the Settlement ($600,000), plus the reasonable and necessary expenses advanced by Class Counsel and carried for the duration of the litigation. *Id*. Plaintiffs' Counsel prosecuted the Class Action on a contingent basis and advanced all associated costs out-of-pocket with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class. *Id*. ¶33. By the time of the Final Fairness Hearing, Counsel's lodestar will easily exceed the requested attorneys' fees, which means there will be a negative (or sometimes called "fractional") multiplier if the requested fees are awarded. *Id*. 32.

Class Counsel will also seek to recover litigation costs and expenses advanced and carried for the duration of this litigation. These expenses include expert consulting fees of nearly $30,000, filing

fees, and mediation costs and travel expenses. The total expenses are expected to be $55,000 or less and will be itemized when Plaintiffs file their motion prior to the Final Fairness Hearing. *Id*. ¶33.

### 5. Any Uncashed Checks Will Be Utilized to Benefit Plan Participants

Any checks issued to persons without an Active Account pursuant to this Plan of Allocation shall expire one hundred twenty (120) calendar days after their issue date. Exhibit 1, Section 5.5, Exhibit 1.B, Section II, F. All checks that are undelivered or are not cashed before their expiration date shall remain in the Settlement Fund and any amounts remaining after distributions shall benefit Plan participants by being paid to the Plan for the purpose of defraying recordkeeping fees and expenses of the Plan that would otherwise be charged to the Plan's participants. Exhibit 1., Section 5.5. There shall be no reversion to Defendants. *Id*.

### D. Approval of Settlement Terms by an Independent Fiduciary

As an additional means of confirming the fairness, reasonableness, and adequacy of the Settlement, and to facilitate the Plan's release of claims under the Department of Labor's regulations pertaining to prohibited transactions, pursuant to the Settlement Agreement, Defendants shall retain an Independent Fiduciary to review and determine whether to approve and authorize the Settlement on behalf of the Plan and Class Members. *See* Exhibit 1, Article 2. Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall provide the Independent Fiduciary with sufficient information so that the Independent Fiduciary can review and evaluate the Settlement and each of the related applications. *Id.* at Section 2.1.4. Furthermore, the Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination. *Id.* at Section 2.1.1.

### E. Settlement Administration

The selected Settlement Administrator is Analytics, LLC ("Analytics"), a settlement administrator with over 50 years of experience administering class action settlements. *See* Muhic Decl. ¶35. Class Counsel has worked successfully with Analytics on several other ERISA and/or other complex class action cases. *Id*. Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Class Notice postcard to Settlement Class Members using addresses from

employment records and documents associated with the Plan. *Id.* ¶36. Analytics will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. *Id.* This type of notice is presumptively reasonable. *See New England Biolabs, Inc.*, 2022 WL 20583575, at *4 (D. Mass. 2022) (finding "Notice provided by first class mail is sufficient when the names and addresses of the class members are known."). Additionally, Analytics will establish a settlement website providing Settlement Class Members with important case documents, including the long-form Notice, relevant pleadings, the complete Settlement Agreement with Exhibits, and other pertinent information, including contact information for the Settlement Administrator, Class Counsel, and Defense counsel. *See* Muhic Decl. ¶36.

### F.    Dissemination of Notice to The Class

No later than thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall cause to be sent via U.S. Mail to each Class Member identified on the Class Member List a Settlement Notice (in substantially the form attached to the Agreement as Exhibit E), and simultaneously post to the Settlement Website the long form of the Settlement Notice (in substantially the form attached to the Agreement as Exhibit A). The Notice includes Class Counsel's contact information and the Settlement Website information, which will list key deadlines and links to the long-form Notice, the Preliminary Approval Order, motions for preliminary approval, final approval, and applications for attorneys' fees, expenses, and case contribution awards, the SAC, and other important documents in the case. *See* Exhibits 1.A and 1.E. In addition, the Notice will include the date and time of the final approval hearing, and notification that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed. *Id.*

Defendants shall use reasonable efforts to provide necessary information to the Settlement Administrator so that it may effectuate Notice, implement the Plan of Allocation, and distribute the Settlement Funds. *See* Exhibit 1, at Sections 8.2. As many Class Members are expected to have Active Accounts, a significant number of Settlement Class Members will be easily reached through their contact information associated with those accounts, while Class Members without Active Accounts

should be reachable through the forwarding information provided to the Plan's recordkeeper when their accounts were closed.

No later than 10 calendar days after the filing of the motion for preliminary approval of the Settlement, Defendants will serve the Class Action Fairness Act Notice on the Attorney General of the United States, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715. *See* Exhibit 1, at Sections 2.6.

### G.    Opportunity to Object

Class Members shall be permitted to object to any aspect of the Settlement. Exhibit 1, at Sections 2.2.7, 2.2.8. The Class Notice shall provide instructions and requirements for Class Members to object to the Settlement. *See* Exhibit 1.A, at Section 15. To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed or postmarked at least twenty-eight (28) calendar days prior to the scheduled Fairness Hearing. *See* Ex. A, at Section 2.2.8. Any Class Member who files and serves a written objection may also appear at the Fairness Hearing either in person or through qualified counsel retained at their own expense. *Id.*, at Section 2.2.9.

### H.    The Court Retains Jurisdiction

The Settlement Agreement provides that the Court shall retain jurisdiction as to all matters relating to administration, enforcement, and interpretation of the Settlement Agreement. *See* Exhibit 1 at Section 14.11.

## IV.    ARGUMENT

Approval of a settlement under Rule 23 involves a two-step process: "First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted." *Vikram v. First Student Mgt., LLC*, No. 17-CV04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).

"At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v. Serenity Transp., Inc.*, No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted). "The Court cannot [ ] fully assess [fairness] factors until the final approval hearing." *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019). In addition, when presented with a proposed settlement, a court must determine whether the proposed

settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Here, the Court can find that certification of a settlement class is appropriate and that the terms of the proposed settlement are fair and reasonable.

### A.      The Court Will Be Able to Certify the Class for Purposes of Settlement

Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *See id.*; Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1022 (9th Cir. 1998).

While ERISA representative actions are ideally suited for class action treatment, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems " *Amchem*, 521 U.S. at 620. A class action is the prevailing procedural vehicle by which retirement plan participants bring representative actions under ERISA §502(a)(2), and courts routinely certify classes bringing ERISA breach of fiduciary duty claims. In doing so, a court "must consider whether the Settlement Agreement 'provides preferential treatment to any class member.'" *Philips v. Munchery Inc.*, No. 19-CV-00469, 2020 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09- 00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)). Here, everyone is treated equally fair under the Settlement.

#### 1.      The Settlement Class Satisfies Rule 23(a)

##### a.      Numerosity

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability is not impossibility, and instead refers only to the 'difficult or inconvenience of joining all members of the class.'" *Foster v. Adams & Assocs., Inc.* 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) (finding that this factor was "easily satisfied" with 2,766 vested plan participants) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). While no specific number is needed to maintain a class action, courts in this Circuit have made clear that a class greater than 40 often satisfies the requirement. *See id.* (citing *Rites v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012)). Here, the Settlement Class is estimated to exceed 70,000 current and former

participants. Muhic Decl. ¶30. Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

### b.    Commonality

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Foster*, 2019 WL 4305538, at *3 (citations omitted). Ultimately, commonality only asks the court to look "for some shared legal issue or common core of facts" and "requires the plaintiff to demonstrate the class members have suffered the same injury." *Id*. (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Here, Plaintiffs claim Defendants breached fiduciary duties owed to the Plan under ERISA § 404, 29 U.S.C. § 1104, and brought the Action in a representative capacity under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan. Indeed, Plaintiffs "br[ought] suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y Jan. 22, 2019). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id*.; *see also* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan") (emphasis added).

The overarching questions of law and fact applicable to all Plan participants include whether the recordkeeping fees were unreasonable and whether Defendants breached fiduciary duties owed to the Plan and its participants by failing to prudently monitor and control the fees. All Plan participants were impacted by the Committee's monitoring and decision-making processes. *See, e.g., Kanawi v. Betchtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (finding commonality where injury stemmed

from whether defendants breached their fiduciary duties to the Plan through their decision-making). Since the central allegations here concern Defendants' administration of the Plan, they are common to all Plan participants who are empowered to bring an action on behalf of the Plan. *See*, *e.g.*, *Kanawi*, 254 F.R.D. at 109.

### c.    Typicality

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* FED. R. CIV. P. 23(a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Kanawi*, 254 F.R.D. at 110 (citing *Hanon v. Dataproducts Corp.*, 976    F.2d    497,    508 (9th Cir.1992) (internal quotation marks omitted)). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id*. Since claims under ERISA § 502(a)(2) are inherently representative claims, any participant's claim is necessarily typical of the claims of the Class; this is because every participant is asserting the Plan's claim. Indeed, Plaintiffs brought this Action on behalf of the Plan, such that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 66 (M.D.N.C. 2008).

Courts routinely find a retirement plan participant's breach of fiduciary duty claim to be typical of the claims of all participants in such a plan. *See Kanawi*, 254, F.R.D. at 110 (typicality met for fiduciary breach claims because "[n]one of the facts or legal claims are unique to the named Plaintiffs[]" since "[t]he complaint is based on allegations and recovery that address the Plan as a whole, not individual claimants"). The circumstances in this Action are no exception..

### d.    Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." FED. R. CIV. P. 23(a)(4). This inquiry analyzes "whether any conflicts of interest exist between the named plaintiffs and the class members" and "whether the named Plaintiffs' counsel will adequately protect the interests of the class." *Kanawi*, 254 F.R.D. at 109.

Plaintiffs' interests are tightly aligned with all other members of the proposed Class by virtue of the very nature of the claims that they bring. Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendants owed to the Plan and to recover the damages due to them. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S 134, at 142 n.9 (1985). "There is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citation omitted) (quoting FED. R. CIV. P. 23(a)(4. Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' interests and the interests of the proposed Class. Indeed, Plaintiffs and Class Members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *See Kanawi*, 254 F.R.D. at 110 *see also Moreno v. Deutsche Bank Ams. Holding Corp*, 2017 WL 3868803, at *7 (S.D.N.Y. Sept. 5, 2017) (finding adequacy and certifying class that alleged excessive recordkeeping fees).

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs here easily surpass. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of the Class and have achieved a very favorable result. Plaintiffs have represented, and will continue to adequately represent all members of the Settlement Class. Muhic Decl. ¶¶14, 58. In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail below. *See, e.g., Bailey v. Verso Corp.*, 2021 WL 5815727 (S.D. Ohio Dec. 24, 2021) (finding that the adequacy requirement satisfied by class counsel who were "experienced ERISA litigators" and had "administered the settlement of numerous retiree-benefit class actions").

### 2.    The Settlement Class Satisfies Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613-14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. *See, e.g., Moreno,* 2017 WL 3868803, at * (certifying settlement class under Rule 23(b)(1) and finding "Defendants' alleged conduct was uniform with respect to each participant"); *Karpik v. Huntington Bancshares, Inc.,* 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (noting that cases involving allegations of fiduciary breaches to a trust or plan[]

are precisely the type of cases that are encompassed by Rule 23(b)(1)); *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 833-34 (1999) (calling breach of trust actions a "classic example" of a Rule 23(b)(1) class); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *4 (S.D. Ohio Sept. 30, 2008) ("courts have routinely found that class certification is appropriate under Rule 23(b), and most usually 23(b)(1)" in ERISA breach of fiduciary duty cases). Actions under ERISA §§ 409 and 502(a)(2) for breach of fiduciary duty present a "paradigmatic example" of a Rule 23(b)(1) class. *Kanawi*, 254 F.R.D. at 111-12 (citations omitted); *see also Foster,* 2019 WL 4305538, at *7 ("Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.") (citations omitted). Certification here is appropriate under either subpart of Rule 23(b)(1). *See Clark*, 201 WL 1801946, at *9-*10 (finding that plaintiffs established basis for certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B)).

### 3. Appointment of Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

(i)     the work counsel has done in identifying or investigating potential claims in this Action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this Action;

(iii)   counsel's knowledge of the applicable law; and

(iv)    the resources counsel will commit to representing the Class.

*See* Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel satisfy all of these factors. *See* Muhic Decl., ¶¶14, 19, 47-57. To date, Class Counsel has leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing several motions, engaging in the discovery, and forcefully advocating Plaintiffs' interests to obtain a very favorable resolution through mediation. *Id*. at ¶¶14, 19, 57. Class Counsel also have extensive experience litigating ERISA fiduciary breach cases and overseeing the administration of settlements in ERISA and other complex class actions. *Id.* at ¶¶49-52, 56. Class Counsel will continue to leverage their wealth of relevant experience and resources on behalf of the Settlement Class through final resolution,

including addressing inquiries from members of the Settlement Class and supervising the work of the Settlement Administrator. Accordingly, the Court should appoint Plaintiffs' counsel as Class Counsel.

### B.    The Settlement, Notice Plan, And Plan of Allocation Warrant Preliminary Approval

#### 1.    The Settlement is Fair, Reasonable and Adequate

Of significance, pursuant to 28 U.S.C. § 1715, and Section 2.6 of the Settlement Agreement, on or about November 7, 2025, which was within ten days of the date Plaintiffs initially filed their motion for preliminary approval of the Settlement, the Settlement Administrator served CAFA Notice upon the Attorney General of the United States, the Department of Labor, and the Attorney Generals of all states and territories wherein any Class members reside. Muhic Decl. ¶60.  No regulator or other official has raised any issue or concern about the proposed Settlement in response to that notice. *Id.*

"To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate." *Urakhchin v. Allianz Asset Mgt. of Am., L.P.*, SACV151614, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (citing Fed. R. Civ. P. 23(e)(2)). In determining whether a settlement meets these requirements, courts look to factors including the strength of the claims and defenses, the risk, expense, and complexity of continued litigation, the stage of proceedings and extent of discovery completed, and the experience and views of class counsel. *Id.* The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Id.* (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

Although Plaintiffs believe there is strong legal and factual support for their claims, there is inherent risk in taking complex ERISA claims to trial. Trial presentations rely heavily on competing expert testimony, and given that Plaintiffs bear the burden of proving both liability and damages, success at trial is by no means guaranteed. In addition, regardless of the outcome of a trial, the non-prevailing party likely would appeal, resulting in further delay and uncertainty, and requiring both

sides to expend considerably more resources in seeking finality. Accordingly, the proposed Settlement recognizes these risks. *See Urakhchin*, 2018 WL 3000490, at *4.

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.,* No. 15-CV-02198, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto,* No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). That is what happened here, where Class Counsel recommend the proposed Settlement after significant arm's-length negotiations conducted through a highly experienced mediator. Muhic Decl. ¶¶22-24.  Class Counsel conducted substantial review and analysis of numerous documents. *Id.* ¶¶ 18, 19. "Discovery can be both formal and informal" and, here, Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have undertaken extensive additional review of materials and information. *See Urakhchin*, 2018 WL 3000490, at *4. 140, 141. Plaintiffs no doubt faced meaningful challenges in their pursuit of a recovery on behalf of the Plan—even setting aside the additional complexity and delay of likely appeals—which strongly supports the preliminary approval of the Settlement. *See Urakhchin*, 2018 WL 3000490, at *4.

Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.,* No. 15-CV-04348-MEJ, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel."). "'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Urakhchin*, 2018 WL 3000490, at *5 (quoting *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) and granting preliminary approval)). This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073, at *13 (D.N. Mar. Is. May 10, 2002); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that settlements that are "the result of arms'-length negotiations among experienced counsel" weigh in favor of preliminary approval.). The Settlement

provides a substantial monetary recovery of $1,800,000. Further, the Parties will submit the Settlement and related applications for fees and expenses to an independent fiduciary retained on behalf of the Plan, to provide an opinion on the Settlement's fairness before the final fairness hearing. *See* Muhic Decl. ¶42.

"Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Johnson v. Serenity Transp., Inc.,* No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted); *Etter v. Allstate Ins. Co.,* No. C 17-00184, 2018 WL 5761755, at *1 (N.D. Cal. May 30, 2018) (stating same).

With the assistance of consultants, Plaintiffs estimated the potential damages in this Action to be approximately $4.77 million to $7.37 million. *See* Muhic Decl. ¶27. Defendants would assuredly challenge the damages calculations in addition to strongly arguing that they at all times adhered to a prudent process in monitoring the recordkeeping fees paid by the Plan. Nevertheless, the $1,800,000 Settlement represents roughly 24.4% to 37.7% of Plaintiffs' maximum damages, which meets or exceeds the accepted range of recovery in ERISA and other class action settlements across the country and in this district. *See*, *e.g.*, *Tobias v. NVIDIA Corp.*, 4:20-cv-06081-JST (N.D. Cal. Dec. 18, 2025) (granting final approval of ERISA class settlement where recovery was 18.3% - 19.1% of estimated damages); *Miguel v. Salesforce.com Inc.* No. 3:20-cv-01753-MMC, Dkt. No. 199 (N.D. Cal. April 4, 2025) (granting final approval of ERISA class settlement recovering approximately 13.5% of maximum calculated damages); *Kehrer v. Giant Eagle, Inc.*, No. 2:24-cv-01211 (W.D.Pa.) (obtaining final approval November 2025 of $668,750 ERISA class settlement recovering 22.3% of damages); *Blackmon v. Zachary Holdings, Inc.*, No. 20-CV-00988, 2022 WL 3142362, at *4 (W.D. Tex. Aug. 5, 2022) (granting final approval and finding that a $1.88 million recovery was approximately 14-23% of the ERISA plaintiffs' total estimated damages which "exceeds many recoveries" in other cases); *Sims v. BB&T Corp.*, No. 15-CV-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving a recovery of 19% of the total investment and recordkeeping damages claimed by plaintiffs); *see also*, *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. 2021)

(settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions").

The more recent relevant settlements and outcomes of similar cases showing the risks of litigation are presented in the table below along with the instant Settlement:

| Case | Court | Claims | Outcome / Recovery | Estimated % Recovery | $ Recovery & Class Size |
|---|---|---|---|---|---|
| **Tobias v. NVIDIA Corp.** | N.D. Cal. | ERISA fiduciary breach (excessive fees) | Settlement (final approval Dec. 18, 2025) | 18.3 – 19.1% | $2.5 M 23,000+ |
| **Miguel v. Salesforce .com Inc.** | N.D. Cal. | ERISA fiduciary breach (excessive fees) | Settlement (final approval Apr. 4, 2025) | 13.5% | $1.35 M 75,000+ |
| **Winkelman v. Whole Foods Market, Inc.,** | W.D. Texas | ERISA fiduciary breach (excessive fees) | Settlement (final approval Jan. 26, 2026 | 17% | $2.0 M 335,000+ |
| **Kehrer v. Giant Eagle Inc.** | W.D. Pa. | ERISA fiduciary breach (excessive fees) | Settlement (final approval Nov. 20, 2025) | 22.3% | $668 K 15,000+ |
| **Bozzini v. Ferguson Enterprises** | N.D. Cal. | ERISA fiduciary breach (excessive fees) | Settlement (pending approval) | 24.4 – 37.7% | $1.8 M 70,000+ |
| **Iannone v. AutoZone Inc.** | W.D. Tenn. | ERISA prudence | Judgment for defendants (bench trial) | 0 | 0 |
| **Waldner v. Natixis Investment** | D. Mass. | ERISA prudence & loyalty | Judgment for defendants | 0 | 0 |

| Managers, L.P. | | | (bench trial) | | |
|---|---|---|---|---|---|
| In re Prime Healthcare ERISA Litigation | C.D. Cal. | ERISA prudence | Judgment for defendants (bench trial) | 0 | 0 |
| Nunez v. B. Braun Medical Inc. | E.D. Pa. | ERISA prudence | Judgment for defendants (bench trial) | 0 | 0 |

In sum, the Settlement is the product of vigorous litigation efforts and arm's-length negotiations by experienced and well-informed counsel, adequately reflects the strength of the Parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### 2.    The Notice Plan Should Be Preliminarily Approved

In conjunction with preliminarily approving a proposed class settlement, courts must approve the proposed means of notifying class members of the settlement. *See* FED. R. CIV. P. 23(I)(2). Due process and Rule 23(e) do not require that each class member receive actual notice, but rather that class notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the proposed plan for the distribution of Notice is designed to reach the largest number of Settlement Class Members possible. The postcard Notice will be sent by first-class mail to the last known address of each Settlement Class Member, and the long-form Notice along with all other pertinent information and copies of the Settlement Agreement and pleadings will be published on a dedicated website for the Settlement. *See* Exhibit 1, Section 2.5; *see also Peters v. Nat'l R.R.*

*Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"). Notably, all Settlement Class Members had Plan accounts, so the Plan's recordkeeper has addresses and other identifying information for the Settlement Class.

The postcard and long-form Notice provide Settlement Class Members the information they need to understand the terms of the Settlement and the settlement process. *See* Exhibits 1.A and 1,E, ("Notice"). The Notice is easily understandable and, significantly, provides:

1. Contact information for class counsel to answer questions.

2. The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case.

3. Instructions on how to access the case docket via PACER or in person at any of the court's locations.

4. The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class.

5. A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed.

Further, the Notice describes the case and the Settlement terms, identifies the dollar amount of the Settlement, the amount Class Counsel is requesting in fees and case contribution awards, the claims released by Settlement Class Members, and objection rights and procedures. In addition, the Notice, Settlement Agreement, preliminary and final approval motions and related applications, and other litigation documents will be posted on the Settlement Website. *See* Exhibit 1, Section 13.2.

In light of the above, the proposed form and manner of Notice should be approved because it satisfies all due process considerations and meets the requirements of Rule 23(e).

### 3. The Plan of Allocation Should Be Preliminarily Approved

Courts within this District hold that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, No. 17-CV-02185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation

omitted). Here, the Plan of Allocation provides recovery to members of the Settlement Class on a pro rata basis according to the total value of the investments in their accounts during the Class Period. This method of allocation is fair to all Class Members and mirrors the asset-based manner in which the alleged excessive recordkeeping charges were paid by the participants in the Plan. *See* Exhibit 1.B (Plan of Allocation) at § C. A pro rata distribution based on each class member's loss relative to that of the class as a whole "has frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.,* No. 16-CV-05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases). Substantially equivalent pro rata allocation plans have been widely accepted by this Court and others in analogous ERISA litigation. *See, e.g., Tobias v. NVIDIA Corp.*, 4:20-cv-06081-JST (N.D. Cal. Dec. 18, 2025) (approving substantially similar pro rata plan of allocation for class members based on account values but no payment if loss was below $5); *Miguel v. Salesforce.com Inc.* No. 3:20-cv-01753-MMC, Dkt. 199 (N.D. Cal. April 4, 2025) (same pro rata allocation but no recovery if loss under $10); *Brown v Mitre Corp*., 22-cv-10976, DKT 114 (D. Mass. Feb. 20, 2025) (granting final approval with nearly identical plan of allocation and $10 guaranteed de minimis payments); *Terraza v. Safeway Inc.,* No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("[s]ettlement Scores will be determined by calculating the Class Member's year-end asset amounts in the Plan during the Class Period"); *see also Barcenas v. Rush Univ. Medical Ctr.*, No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) (approving substantially similar pro rata plan of allocation in analogous ERISA action); *Karpik*, 2021 WL 757123, at *2 (approving a plan of allocation distributing the settlement fund on a pro rata basis). The Allocation Plan also provides procedures for the Settlement Administrator to identify and compensate former participants and beneficiaries or alternate payees who no longer have active accounts. *See* Exhibit 1.B, at § II.F.

In light of the equitable treatment of Class Members, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

## V.    CONCLUSION

In light of the above, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for the Fairness Hearing.

Dated: March 27, 2026

Respectfully Submitted,

By: /s/ Peter A. Muhic

Peter A. Muhic
(*Admitted Pro Hac Vice*)
**MUHIC LAW LLC**
923 Haddonfield Road, Suite 300
Cherry Hill, NJ  08002
Phone:  (856) 242-1802
Email: peter@muhiclaw.com

James A. Clark (SBN 278372)
**TOWER LEGAL GROUP, PC**
11335 Gold Express Drive, Ste. 105
Gold River, CA 95670
Telephone: (916) 361-6009
Email: james.clark@towerlegalgroup.com

*Proposed Class Counsel*

Edwin J. Kilpela, Jr.
Paige T. Noah
**WADE KILPELA SLADE LLP**
6425 Living Place
Suite 200
Pittsburgh, PA 15206
412-314-0515
ek@waykayslay.com
pnoah@waykayslay.com

Paul Sharman
**The Sharman Law Firm LLC**
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
(678) 242-5297
paul@sharman-law.com

*Plaintiffs' Counsel*

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 3:22-cv-05667-AMO
-21-